IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAIFULLAH PARACHA,

Petitioner,

v.

GEORGE W. BUSH,
President of the United States,
*et al.*,

Respondents.

Civil Action No. 04-CV-2022 (PLF)

**RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION OR APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND FOR A PRELIMINARY INJUNCTION**

**INTRODUCTION**

Petitioner seeks drastic, emergency relief enjoining his removal from the Court's jurisdiction when there is not a shred of evidence that such a transfer will ever occur. The notion that respondents would attempt to evade the Court's jurisdiction is not only sheer speculation; it is also illogical, since respondents voluntarily brought petitioner within the Court's jurisdiction in the first place. Further, petitioner's baseless motion would, if granted, unduly interfere with the Executive Branch's constitutionally conferred prerogatives with respect to managing the detention of those designated as enemy combatants. Accordingly, petitioner's request for a temporary restraining order and preliminary injunction should be denied.

**BACKGROUND**

On September 11, 2001, the al Qaeda terrorist network launched a coordinated attack on the United States, killing approximately 3,000 persons. Congress responded by passing a

resolution authorizing the President:

> to use all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, in order to prevent any future acts of international terrorism against the United States by such nations, organizations or persons.

Authorization for Use of Military Force, Pub. L. 107-40, §§ 1-2, 115 Stat. 224 (2001) ("AUMF"). Congress emphasized that the forces responsible for the September 11th attacks "continue to pose an unusual and extraordinary threat to the national security," and that "the President has authority under the Constitution to take action to deter and prevent acts of international terrorism against the United States."  Id.

Pursuant to this authorization and his authority under the Constitution, the President, as Commander in Chief, dispatched United States armed forces to seek out and subdue the al Qaeda terrorist network and the Taliban regime and others that had supported it.  In the course of that campaign – which remains ongoing – the United States and its allies have captured thousands of individuals overseas, many of whom are foreign nationals.  The Military has determined that many of those individuals should be detained during the conflict as enemy combatants.  As reflected in the Order establishing Combatant Status Review Tribunals ("CSRTs"), an enemy combatant is "an individual who was part of or supporting Taliban or al Qaeda forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who has committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."  See Order Establishing Combatant Status Review Tribunal (July 7, 2004) ¶ 2 (available at www.defenselink.mil/news/dul2004/d20040707review.pdf).

Approximately 550 of the foreign nationals designated for detention as enemy combatants

are being held by the Department of Defense ("DoD") at the United States Naval Base at Guantanamo Bay, Cuba. Petitioner is among those being so detained. These detainees can and have been transferred out of Guantanamo Bay if they are determined by DoD as appropriate for release or for transfer to another government for continued detention or prosecution. Others have been determined eligible for prosecution by a military commission for violations of the laws of war. To date, no Guantanamo Bay detainees have been transferred for continued detention to another DoD facility outside the United States.[1]

Currently, each petitioner's status as an enemy combatant is undergoing review by military tribunals, known as CSRTs, convened for that purpose. During the CSRT proceedings, the detainees are provided with notice of the factual basis for their classification as enemy combatants, they are allowed to present evidence on their own behalf, and the tribunal members then make an independent determination as to whether the detainees should continue to be designated as enemy combatants. Those who are not so designated have been and will be released.

## ARGUMENT

### PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER SHOULD BE DENIED

A request for emergency injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of

[1] A number of detainees, however, have been temporarily transferred to other locations while in the process of being released or returned to their country of origin.

persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). To prevail in a request for a preliminary injunction, a movant "must 'demonstrate 1) a substantial likelihood of success on the merits, 2) that [he] would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunction.'" See Katz v. Georgetown Univ., 246 F.3d 685, 687-88 (D.C. Cir. 2001) (quoting CityFed Financial Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir.1995)).[2] Petitioner fails to meet his burden on all four prongs of the standard.

**1. Petitioner Has Not Shown Irreparable Injury If The Injunction Is Denied**

Petitioner asks that respondents be enjoined from removing him from the Court's jurisdiction and thereby depriving him of its benefits. See Points and Authorities in Support of Petitioner's Motion or Application for a Temporary Restraining Order and for a Preliminary Injunction ("Petitioner's Brief") at 2. Even if petitioner were correct that just any such move or transfer would deprive the Court of jurisdiction, but cf. Rumsfeld v. Padilla, 124 S. Ct. 2711, 2721 (2004) (stating that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release"), petitioner offers no evidence of an impending transfer beyond counsel's mere "apprehensi[on]," Petitioner's Brief (Hunt Declaration ¶ 8), and indeed, as explained supra, to date not a single alien detainee at Guantanamo Bay who filed a habeas petition has been

[2] The standards for a temporary restraining order are the same as those for a preliminary injunction. See Public Citizen v. National Economic Comm'n, 703 F. Supp. 113, 124 (D.D.C. 1989) (citing Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977)).

transferred to other detention locations for continued detention. See Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985) (finding that the movant must "substantiate the claim that irreparable injury is 'likely' to occur"). The possibility of a transfer in petitioner's case is therefore unsubstantiated and purely speculative. See Wisconsin Gas, 758 F.2d at 674 (stating that for an alleged injury to constitute irreparable harm, it must be "actual and not theoretical"); see also Connecticut v. Massachusetts, 282 U.S. 660, 674 (1931) (holding that injunctive relief "will not be granted against something merely feared as liable to occur at some indefinite time"), quoted in Wisconsin Gas, 758 F.2d at 674.

Moreover, the notion that respondents would move petitioner in order to evade the Court's jurisdiction is far-fetched. See Petitioner's Motion or Application for a Temporary Restraining Order and for a Preliminary Injunction ("Petitioner's Motion") at 2 ¶ 3. Petitioner was moved to Guantanamo Bay in September 2004, after the decision in Rasul v. Bush conferred federal court jurisdiction over the Guantanamo Bay detainees' habeas corpus challenges. 124 S. Ct. 2686 (2004). Had it been their objective to evade jurisdiction, respondents would not have transferred petitioner to Guantanamo Bay in the first place. Petitioner therefore fails to show any injury that is "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." Wisconsin Gas, 758 F.2d at 674 (internal quotation marks omitted).[3]

---

[3] Petitioner does not even attempt to show imminent irreparable harm or to otherwise satisfy the standard with respect to the additional relief he requests. Petitioner's Motion at 3 ¶¶ B, C, D, E. Petitioner asks that respondents be required to preserve all evidence concerning the treatment of prisoners although there is not a speck of evidence that they would improperly dispose of it. See Federal Communications Comm'n v. Schreiber, 381 U.S. 279, 296 (1965) (stating that administrative agencies are entitled to presumption "that they will act properly and according to law").

(continued...)

**2. An Injunction Would Harm Respondents And The Public Interest**

Petitioner's request for an injunction should be denied because, as discussed above, no need for such an injunction exists. Furthermore, the interests of respondents and the public converge with respect to the issues raised by petitioner's motion to compel the denial of the requested relief. An injunction constraining respondents in the abstract, as petitioner seeks, would raise serious constitutional concerns, because it would intrude unnecessarily into the Executive Branch's constitutionally protected domain of capturing, detaining, and managing the detention of those who are designated as enemy combatants. See, e.g., Department of the Navy v. Egan, 484 U.S. 518, 530 (1988) (noting that "courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs"); Chicago &

[3](...continued)

As to petitioner's request that respondents pay and provide for unmonitored communications with his attorney, and that the Court authorize payment of petitioner's legal fees, these matters are also not appropriate for emergency injunctive relief. Economic loss does not, in and of itself, constitute irreparable injury. Wisconsin Gas, 758 F.2d at 674. In any event, petitioner has failed to demonstrate either that the Criminal Justice Act ("CJA") applies to habeas litigation having no connection to prior criminal proceedings, or that he would be financially eligible for appointment of counsel and litigation expenses thereunder, 18 U.S.C. § 3006A (explaining that the person seeking court-appointed – and taxpayer-funded – counsel must establish that he is "financially eligible" for such services). Given petitioner's financial situation, he may in fact not be eligible for CJA fees. See David Rohde, "Pakistani Detainee Enjoyed Deep U.S. Roots," N.Y. Times, August 18, 2003, at A9 (reporting that petitioner has "made a small fortune" through his business ventures); see also United States v. Harris, 707 F.2d 653, 661 (2d Cir. 1983) (stating that "where a defendant's inability to afford counsel has been put into doubt, he has the burden of coming forward with evidence to rebut the government's evidence of ability to afford counsel"). (This issue is being dealt with in a coordinated fashion in the detainee cases before Judge Green). In addition, under the Court's auspices, procedures have been established for habeas counsel to meet with detainees at Guantanamo Bay. See Amended Protective Order and Procedures For Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba (filed Nov. 8, 2004 in Guantanamo Bay detainee cases). Placing this case under the Order would moot petitioner's claims. A preliminary injunction is therefore neither necessary nor appropriate to remedy these claims.

Southern Air Lines v. Waterman S.S. Corp., 333 U.S. 103, 111 (1948) (finding that Executive decisions as to foreign policy "are and should be undertaken only by those directly responsible to the people whose welfare they advance or imperil"); National Federation of Federal Employees v. United States, 905 F.2d 400, 406 (D.C. Cir. 1990) (finding that "the federal judiciary is ill-equipped to conduct reviews of the nation's military policy").[4]

## CONCLUSION

For the foregoing reasons, petitioner's request for a temporary restraining order and preliminary injunction should be denied.

Dated: Nov. 24, 2004

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

BRIAN D. BOYLE
Principal Deputy Associate Attorney General

DAVID B. SALMONS
Assistant to the Solicitor General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

ROBERT D. OKUN
Assistant United States Attorney
Chief, Special Proceedings Section

---

[4] For this same reason petitioner has failed to demonstrate a likelihood of success on the merits.

/S/ Lisa A. Olson
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
LISA A. OLSON
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
ANDREW I. WARDEN
NICHOLAS J. PATTERSON
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W. Room 6118
Washington, DC 20530
Tel: (202) 514-5633
Fax:: (202) 616-8460
E-mail: lisa.olson@usdoj.gov
terry.henry@usdoj.gov

Attorneys for Respondents