Clearance for ECF granted by CSO.

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLUMBIA

SAIFULLAH PARACHA,

    Petitioner,

    v.                               Case No. 04cv02022-PLF

Hon . GEORGE W. BUSH,

et al.,

    Respondents.


**PETITIONER'S OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS
IN LIGHT OF THE D.C.CIRCUIT'S RULING
IN *AL-ODAH* AND *BOUMEDIENNE***


This petition for habeas corpus was filed November 17, 2004. At that time *Rasul v. Bush*, 542 U.S. 466, 124 S. Ct. 2686, 159 L. Ed. 2d 548 (2004) had been law for several months, so the basis for the jurisdiction of this Court was clear: An alien confined at Guantanamo as an enemy combatant had the privilege of the writ of habeas corpus to challenge his confinement. The government filed a factual return which showed that petitioner had in no way taken part in any combat. Instead of granting petitioner's motion for summary judgment and issuing the writ, as 28 USC 2241 and 2243 required, this Court stayed the case to await further developments and a possible change in the law. The stay was to last until the "resolution of all appeals in *In re*

*Guantanamo Detainee Cases*, Civil No. 02-0299, et al., 2005 WL 195356 (D.D.C. Jan. 31,2005), and *Khalid et al. v. Bush*, Civil No. 04-1142,2005 WL 100924 (D.D.C. Jan. 19,2005)." Docket 49, March 23, 2005.

On February 20, 2007, the D.C. Circuit decided those cases, consolidated under the captions *Boumediene v. Bush*, No. 05-5062 and *Al-Odah v. United States*, No. 05-5064, 476 F.3d 981 (D.C. Cir., February 20, 2007). The panel was divided. Two judges agreed with the government's theory that the Suspension Clause of the U.S. Constitution, Article I, Section 9, clause 2, protects the writ of habeas corpus from suspension for everyone but aliens with no connection to the United States. The Court offered no comment on the habeas rights of aliens present in the United States, nor of aliens with lawful U.S. visas, nor of aliens with property or personal investments in the United States. The decision therefore has no relevance to Saifullah Paracha, who lived in the United States 16 years, still has a permanent resident's visa, and has numerous relatives and business contacts here.

A dissent by Judge Rogers canvassed the American and English cases from the 1789 era and confirmed that habeas would have been available at that time to aliens at an outlying but wholly-controlled place like Guantanamo. She observed correctly:

> This court need not make the final inference. It has already been made for us. In *Rasul* [*Rasul v. Bush*, 542 U.S. 466, 124 S. Ct. 2686, 159 L. Ed. 2d 548 (2004)], the Supreme Court stated that "[a]pplication of the habeas statute to persons detained at the [Guantanamo] base is consistent with the historical reach of the writ of habeas corpus." 542 U.S. at 481. By reaching a contrary conclusion, the court ignores the settled principle that "carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative." [Citations omitted.]
>
> *Boumediene*, No. 05-5062 and *Al-Odah*, No. 05-5064,
> February 20, 2007, dissent, slip 14-15.

The petitioners in those cases petitioned for certiorari. *Boumedien v. Bush*, No. 06-1195 and *Al-Odah v. United States*, No. 06-1196, filed March 5, 2007. Certiorari was denied April 2, 2007,

127 S. Ct. 1478. Justices Breyer, Souter, and Ginsburg joined in an opinion saying certiorari should have been granted, and two others, Justices Stevens and Kennedy, made it clear the denial of certiorari was only temporary, pending exhaustion of remedies. Justices Stevens and Kennedy added this extraordinary admonition:

> Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this Court, "courts of competent jurisdiction," including this Court, "should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised." [Citation.]
>
> *Boumediene v. Bush,* 06-1195 and -1196, April 2, 2007, attached hereto.

Thus the law is much more unsettled than it was on March 23, 2005, when this Court stayed this case. To dismiss this case now, as the government requests, although this Court refused to act when the law was on petitioner's side, would be injustice and partiality of the worst order.

Moreover, the government's motion, page 3, footnote 5, correctly notes, "Some of the petitioners have filed motions in the Court of Appeals and the Supreme Court requesting that issuance of the mandate in *Boumedien* be stayed." In Paracha's case, we have the April 9, 2007, scheduling order of the D.C. Circuit, which the government has attached as Exhibit E to its motion to dismiss. That order concludes by telling the clerk to withhold the mandate concerning Paracha "until seven days after disposition of any timely petition for rehearing or rehearing en banc." Time for filing petitions for rehearing will not expire till May 24, 2007. FRAP 40(a).

The government's motion is therefore at the very least premature, as applied to Paracha.

The most proper course is for this Court to take no action at all. If this Court must issue some order, it should be something preserving the status quo until the constitutionality of suspending habeas corpus is finally determined, a "stay and abey" order as required by *Rhines v.*

*Weber*, 544 U.S. 269 (2005). It should specifically preserve the papers and records of this case so that they are not destroyed under paragraphs 34. and 45. of the protective order. A proposed order preserving the status quo is attached, although it is Paracha's request that the government's motion for dismissal be simply denied.

WHEREFORE respondents' motion to dismiss should be denied.

Respectfully submitted,

April 20, 2007

_____
GAILLARD T. HUNT
     Attorney for Petitioner
(D.C. Bar No. 89375)
1409 Gleason Street
Silver Spring, Maryland 20902
(Not admitted in Maryland)
301-530-2807
gthunt@mdo.net
(Fax: 301-564-6059)

A PROPOSED ORDER FOLLOWS:

4

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLUMBIA

SAIFULLAH PARACHA,

    Petitioner,

    v.                                                 Case No. 04cv02022-PLF

Hon. GEORGE W. BUSH,

et al.,

    Respondents.

### (PROPOSED) ORDER

Upon consideration of respondents' motion to dismiss this case, dated April 19, 2007, and petitioner's response thereto:

Respondents' motion is hereby denied.

The parties, the clerk's office, and all others having custody of records and papers filed herein or pertaining to this case are hereby ordered to preserve all such records and papers pending further order of this Court.

**IT IS SO ORDERED.**

_____        _____
Date                                                      United States District Judge

Notify counsel:

GAILLARD T. HUNT
    Attorney for Petitioner
(D.C. Bar No. 89375)
1409 Gleason Street
Silver Spring, Maryland 20902
(Not admitted in Maryland)
301-530-2807
gthunt@mdo.net
(Fax: 301-564-6059)


ANDREW WARDEN
    Attorney for Respondents
20 Massachusetts Avenue NW
Room 6118
Washington, D.C.20530
202-514-5633
Tel: 202-514-4107
Fax: 202-616-8470

# SUPREME COURT OF THE UNITED STATES

LAKHDAR BOUMEDIENE ET AL.

06–1195      *v.*

GEORGE W. BUSH, PRESIDENT OF THE UNITED STATES, ET AL.

KHALED A. F. AL ODAH, NEXT FRIEND OF FAWZI KHALID ABDULLAH FAHAD AL ODAH, ET AL.

06–1196      *v.*

UNITED STATES ET AL.

ON PETITIONS FOR WRITS OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

Nos. 06–1195 and 06–1196. Decided April 2, 2007

The petitions for writs of certiorari are denied.

Statement of JUSTICE STEVENS and JUSTICE KENNEDY respecting the denial of certiorari.

Despite the obvious importance of the issues raised in these cases, we are persuaded that traditional rules governing our decision of constitutional questions, see *Ashwander* v. *TVA*, 297 U. S. 288, 341 (1936) (Brandeis, J., concurring), and our practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus, cf. *Ex parte Hawk*, 321 U. S. 114 (1944) *(per curiam)*, make it appropriate to deny these petitions at this time. However, "[t]his Court has frequently recognized that the policy underlying the exhaustion-of-remedies doctrine does not require the exhaustion of inadequate remedies." *Marino* v. *Ragen*, 332 U. S. 561, 570, n. 12 (1947) (Rutledge, J., concurring). If petitioners later seek to establish that the

2  BOUMEDIENE v. BUSH

Statement of STEVENS and KENNEDY, JJ.

Government has unreasonably delayed proceedings under the Detainee Treatment Act of 2005, Tit. X, 119 Stat. 2739, or some other and ongoing injury, alternative means exist for us to consider our jurisdiction over the allegations made by petitioners before the Court of Appeals. See 28 U. S. C. §§1651(a), 2241. Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this Court, "courts of competent jurisdiction," including this Court, "should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised." *Padilla* v. *Hanft*, 547 U. S. 1062, 1064 (2006) (KENNEDY, J., concurring in denial of certiorari). And as always, denial of certiorari does not constitute an expression of any opinion on the merits. See *Rasul* v. *Bush*, 542 U. S. 466, 480–481 (2004) (majority opinion of STEVENS, J.); *id.*, at 487 (KENNEDY, J., concurring in judgment).

Cite as: 549 U. S. ____ (2007) 1

Breyer, J., dissenting

# SUPREME COURT OF THE UNITED STATES

LAKHDAR BOUMEDIENE ET AL.
06–1195         v.
GEORGE W. BUSH, PRESIDENT OF THE UNITED STATES, ET AL.

KHALED A. F. AL ODAH, NEXT FRIEND OF FAWZI KHALID ABDULLAH FAHAD AL ODAH, ET AL.
06–1196         v.
UNITED STATES ET AL.

ON PETITIONS FOR WRITS OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

Nos. 06–1195 and 06–1196.  Decided April 2, 2007

JUSTICE BREYER, with whom JUSTICE SOUTER joins, and with whom JUSTICE GINSBURG joins as to Part I, dissenting from the denial of certiorari.

I would grant the petitions for certiorari and expedite argument in these cases.

I

Petitioners, foreign citizens imprisoned at Guantanamo Bay, Cuba, raise an important question: whether the Military Commissions Act of 2006, Pub. L. 109–366, 120 Stat. 2600, deprives courts of jurisdiction to consider their habeas claims, and, if so, whether that deprivation is constitutional. I believe these questions deserve this Court's immediate attention.

First, the "province" of the Great Writ, "shaped to guarantee the most fundamental of all rights, is to provide an effective *and speedy* instrument by which judicial inquiry may be had into the legality of the detention of a person." *Carafas* v. *LaVallee*, 391 U. S. 234, 238 (1968) (emphasis

2                  BOUMEDIENE v. BUSH

BREYER, J., dissenting

added and footnote omitted). Yet, petitioners have been held for more than five years. They have not obtained judicial review of their habeas claims. If petitioners are right about the law, immediate review may avoid an additional year or more of imprisonment. If they are wrong, our review is nevertheless appropriate to help establish the boundaries of the constitutional provision for the writ of habeas corpus. Cf. *Carafas, supra*. Finally, whether petitioners are right or wrong, our prompt review will diminish the legal "uncertainty" that now "surrounds" the application to Guantanamo detainees of this "fundamental constitutional principle." Brief for Senator Arlen Specter as *Amicus Curiae* 19; see generally *ibid.* (favoring expedited consideration of these cases). Doing so will bring increased clarity that in turn will speed review in other cases.

Second, petitioners plausibly argue that the lower court's reasoning is contrary to this Court's precedent. This Court previously held that federal jurisdiction lay to consider petitioners' habeas claims. *Rasul* v. *Bush*, 542 U. S. 466, 485 (2004) (providing several of these petitioners with the right to habeas review under law as it then stood). Our analysis proceeded under the then-operative statute, but petitioners urge that our reasoning applies to the scope of the constitutional habeas right as well. In holding that the writ extended to the petitioners in *Rasul*, we said that Guantanamo was under the complete control and jurisdiction of the United States. *Id.*, at 480–481; *id.*, at 487 (KENNEDY, J., concurring in judgment) ("Guantanamo Bay is in every practical respect a United States territory"). We then observed that the writ at common law would have extended to petitioners:

> "Application of the habeas statute to persons detained at the base is consistent with the historical reach of the writ of habeas corpus. At common law, courts ex-

ercised habeas jurisdiction over the claims of aliens detained within sovereign territory of the realm, as well as the claims of persons detained in the so-called exempt jurisdictions, where ordinary writs did not run, and all other dominions under the sovereign's control.... [E]ven if a territory was no part of the realm, there was no doubt as to the court's power to issue writs of habeas corpus if the territory was under the subjection of the Crown." *Id.*, at 481–482 (internal quotation marks and footnotes omitted).

Our reasoning may be applicable here. The lower court's holding, petitioners urge, disregards these statements and reasoning.

Further, petitioners in *Boumediene* are natives of Algeria, and citizens of Bosnia, seized in Bosnia. Pet. for Cert. in No. 06–1195, p. 4. Other detainees, including several petitioners in *Al Odah*, also are citizens of friendly nations, including Australia, Canada, Kuwait, Turkey, and the United Kingdom; and many were seized outside of any theater of hostility, in places like Pakistan, Thailand, and Zambia. Pet. for Cert. in No. 06–1196, pp. 2–3, and n. 2; 476 F. 3d 981, 1007 (CADC 2007) (Rogers, J., dissenting). It is possible that these circumstances will make a difference in respect to our resolution of the constitutional questions presented. Cf. *Hamdi* v. *Rumsfeld*, 542 U. S. 507, 509, 514, 521 (2004) (plurality opinion of O'Connor, J., joined by Rehnquist, C. J., and KENNEDY and BREYER, JJ.) (holding military had authority to detain United States citizen "enemy combatant," captured in a "*zone of active combat* in a foreign theater of conflict," specifically Afghanistan, and stressing, in a "narrow" holding, that "*[a]ctive combat operations against Taliban fighters ... [were] ongoing in Afghanistan*" (emphasis added)).

The Government, of course, contests petitioners' arguments on the merits. But I do not here say petitioners are

correct; I say only that the questions presented are significant ones warranting our review.

If petitioners have the right of access to habeas corpus in the federal courts, this Court would then have to consider whether Congress' provision in the Detainee Treatment Act of 2005 (DTA), Tit. X, 119 Stat. 2739, providing for review in the Court of Appeals for the D. C. Circuit of those proceedings, is a constitutionally adequate substitute for habeas corpus. See *Swain* v. *Pressley*, 430 U. S. 372, 381 (1977). The Government argues that we should therefore wait for a case where, unlike petitioners here, the detainee seeking certiorari has actually sought and received review under these alternative means. *E.g.*, Brief in Opposition 16–17. Petitioners respond, however, that further proceedings in the Court of Appeals under the DTA could not possibly remedy a constitutional violation. The lower court expressly indicated that *no constitutional rights* (not merely the right to habeas) extend to the Guantanamo detainees. 476 F. 3d, at 991–992 (rejecting petitioners' arguments under this Court's precedent that fundamental rights afforded by the Constitution extend to Guantanamo, and noting that "[p]recedent in this circuit also forecloses the detainees' claims to constitutional rights"). Therefore, it is irrelevant, to petitioners, that the DTA provides for review in the D. C. Circuit of any constitutional infirmities in the proceedings under that Act, §1005(e)(2)(C)(ii), 119 Stat. 2742; the lower court has already rendered that provision a nullity.

Nor will further percolation of the question presented offer elucidation as to either the threshold question whether petitioners have a right to habeas, or the question whether the DTA provides a constitutionally adequate substitute. It is unreasonable to suggest that the D. C. Circuit in future proceedings under the DTA will provide review that affords petitioners the rights that the Circuit has already concluded they do not have. Ordinarily, ha-

beas petitioners need not exhaust a remedy that is inadequate to vindicate the asserted right. See *Wilwording* v. *Swenson,* 404 U. S. 249, 250 (1971) *(per curiam).*

The Government, in *Hamdan* v. *Rumsfeld,* 548 U. S. \_\_\_ (2006), similarly argued for delay. *Id.,* at \_\_\_ (slip op., at 52) ("The Government objects to our consideration of any procedural challenge at this stage on the grounds that . . . [petitioner] will be able to raise any such challenge following a 'final decision' under the DTA"). That case, too, presented questions of the scope of the Guantanamo detainees' right to federal-court review of DTA-authorized procedures. We there rejected the Government's argument for delay as unsound. *Id.,* at \_\_\_–\_\_\_ (slip op., at 52–53) ("[C]ontrary to the Government's assertion, there *is* a 'basis to presume' that the procedures . . . violate the law . . . . Under these circumstances, review . . . in advance of a 'final decision' . . . is appropriate").

Here, as in *Hamdan,* petitioners argue that the tribunals to which they have already been subjected were infirm (by, *inter alia,* denying Petitioners counsel and access to evidence, Pet. for Cert. in No. 06–1195, p. 7). *Hamdan, supra,* at \_\_\_–\_\_\_ (slip op., 35–36). Here, as in *Hamdan,* petitioners assert that these procedural infirmities cannot be corrected by review under the DTA which provides for no augmentation of the record on appeal and, as noted above, will provide no remedy for any constitutional violation. See DTA §1005(e)(2)(C), 119 Stat. 2742; 476 F. 3d, at 1005 (Rogers, J., dissenting). Here, as in *Hamdan, supra,* at \_\_\_ (slip op., at 25), petitioners have a compelling interest in assuring in advance that the procedures to which they are subject are lawful. And here, *unlike Hamdan,* the military tribunals in Guantanamo have completed their work; all that remains are the appeals. For all these reasons, I would grant the petitions.

6           BOUMEDIENE v. BUSH

BREYER, J., dissenting

## II

Moreover, I would expedite our consideration. In the past, this Court has expedited other cases where important issues and a need for speedy consideration were at stake. In *Ex parte Quirin*, 317 U. S. 1 (1942), the Court decided that it should grant expedited consideration,

> "[i]n view of the public importance of the questions raised by [the] petitions and of the duty which rests on the courts, in time of war as well as in time of peace, to preserve unimpaired the constitutional safeguards of civil liberty, and because in our opinion the public interest required that we consider and decide those questions without any avoidable delay." *Id.*, at 19.

See also *Felker* v. *Turpin*, 518 U. S. 651 (1996); *New York Times Co.* v. *United States*, 403 U. S. 713 (1971) *(per curiam); Youngstown Sheet & Tube Co.* v. *Sawyer*, 343 U. S. 579 (1952).

For these reasons, I would grant the petitions for certiorari and the motions to expedite the cases in accordance with the schedule deemed acceptable (in the alternative) by the Government.