IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAIFULLAH PARACHA, | : | |
| | : | |
| Petitioner, | : | |
| vs. | : | Civil Action No. 1:04-CV-2022 |
| | : | |
| JOSEPH R. BIDEN, et al., | : | |
| | : | |
| Respondents. | : | |

**<u>SUPPLEMENT TO THE PETITION FOR WRIT OF HABEAS CORPUS
BASED ON NEWLY AVAILABLE GROUNDS FOR RELIEF</u>**

Petitioner Saifullah Paracha respectfully supplements his previously denied petition for a writ of habeas corpus based on newly available grounds for relief.[1] The denial of his petition is pending appeal in the D.C. Circuit Court of Appeals. *Paracha v. Trump*, D.C. Cir. Case. No. 20-5039. However, his case has been remanded to this Court based on arguments not available to him at the time his original petition was ruled upon.[2] Mr. Paracha is entitled to a writ of habeas corpus for two independent reasons. First, Respondents no longer have the legal authority to detain Mr. Paracha now that the war with Afghanistan and al Qaeda has ended. Second, Respondents no longer have the legal authority to detain Mr. Paracha because the U.S. Government, in clearing him for release through the Periodic Review Board ("PRB"), has determined his continued detention is no longer necessary under the law of war.

---

[1] Petitioner appreciates that *Paracha v. Trump*, D.C.D. Case No.21-cv-2567, is likely to be consolidated with this case. Petitioner intends for this Supplement to serve as the brief in both cases and does not intend to file multiple, parallel briefing if the cases are consolidated.

[2] Mr. Paracha's appeal is being held in abeyance pending resolution of these new grounds. *Paracha v. Trump*, D.C. Cir. Case No. 20-5039 (Doc. 1926317, 12/10/21 Order).

I.  **Procedural History**

Saifullah Paracha was captured in 2003 and has been continuously held without charge since then. (Doc. 555, Unclassified Opinion, p. 1). He is the oldest detainee in Guantanamo as a man in his seventies. In November 2004, Mr. Paracha filed a petition for habeas corpus. *Id.* After a lengthy stay and protracted litigation, an evidentiary hearing was held in October 2019. *Id.* As a result, this Court denied Mr. Paracha's petition. *Id.* at p. 124. Mr. Paracha timely appealed from that denial, and that appeal remains active pending resolution of the instant filing. *See Paracha v. Trump*, D.C. Cir. Case. No. 20-5039.

In February 2020, following this Court's denial of his petition, the United States entered into a written peace agreement with the Taliban. This agreement included the promise to withdraw American troops in exchange for, among other things, the Taliban's assurances it will "prevent the use of the soil of Afghanistan by any group or individual against the security of the United States and its allies."[3] In August 2021, President Biden completed the withdrawal of U.S. troops from Afghanistan and stated that the United States is no longer at war there, having achieved its objective with respect to al Qaeda. The Taliban is now the recognized official government in Afghanistan.

In addition to the end of the war in Afghanistan, on May 17, 2021, at long last, Mr. Paracha was cleared for release by the PRB. Pakistan has consistently stated it wants Mr. Paracha to be returned to his homeland. While the government maintains the Secretaries of State and Defense

---

[3]   Doha Agreement is available here https://www.state.gov/wp-content/uploads/2020/02/Agreement-For-Bringing-Peace-to-Afghanistan-02.29.20.pdf

are taking "vigorous efforts" to repatriate Mr. Paracha to Pakistan, he remains incarcerated in Guantanamo Bay, now seven months after his clearance for release.

These developments — the end of the war in Afghanistan and Mr. Paracha's clearance for release — took place only after Mr. Paracha had fully litigated his habeas claims and been denied relief. However, because the developments deprive Respondents of its authority to continue to detain Mr. Paracha, they each now form a separate basis for release under habeas. As a result, the D.C. Circuit granted Mr. Paracha's request for a limited remand to this Court for consideration of these additional grounds for relief. *Paracha v. Trump*, D.C. Cir. Case No. 20-5039 (Doc. 1926317, 12/10/21 Order). Mr. Paracha now files this supplement to his original petition for a writ of habeas asserting that the end of hostilities deprives Respondents of the legal authority to continue to detain him and his clearance for release by the PRB demonstrates his continued detention is inconsistent with the law of war. Mr. Paracha moves for immediately repatriation to Pakistan.

## II. The U.S. Government has no legal authority to continue Mr. Paracha's detention now that the war with Afghanistan and al Qaeda has ended.

President Joseph R. Biden has explicitly said the United States is no longer at war in Afghanistan and that U.S. troops have fully withdrawn. President Biden's administration has further stated that the United States has achieved its "objective" with respect to defeating al Qaeda in Afghanistan. Detention authority over prisoners of war is by law coterminous with the war itself. Because the war in Afghanistan and with al Qaeda is over, the authority to detain Saifullah Paracha has now expired. Petitioner asserts he is entitled to habeas relief because this end of hostilities means that Respondents no longer have detention authority over him. As a result, he must be immediately released and repatriated to his homeland in Pakistan.

### a. Recent international developments

On February 29, 2020, the United States entered into a written peace agreement with the Taliban. This agreement included the promise to withdraw American troops in exchange for, among other things, the Taliban's assurances it will "prevent the use of the soil of Afghanistan by any group or individual against the security of the United States and its allies."[4] On August 31, 2021, United States Military completed its withdraw from Afghanistan in accordance with the peace agreement and President Biden declared the end to the war in Afghanistan — "the longest war in American history."[5]  There can be little dispute that the war in Afghanistan is over.

The war with respect to al Qaeda is over too. President Biden stated that the United States has defeated al Qaeda in Afghanistan in line with the goals the invasion set out to accomplish:

> War in Afghanistan was never meant to be a multigenerational undertaking. We were attacked. **We went to war with clear goals. We achieved those objectives. Bin Laden is dead, and al Qaeda is degraded in Iraq — in Afghanistan.** And it's time to end the forever war.[6]

The Biden Administration further clarified that al Qaeda and the United States are not engaged in active hostilities, rather, the United States is only monitoring what remains of them, if anything:

> [W]e are not taking our eye off of the terrorist threat or signs of al Qaeda's resurgence. **They do not currently present an external— or do not currently possess an external plotting capability that can threaten the homeland.** But this is something that we have to focus on: its potential for reemerging in the years ahead.[7]

---

[4]    Doha Agreement is available here https://www.state.gov/wp-content/uploads/2020/02/Agreement-For-Bringing-Peace-to-Afghanistan-02.29.20.pdf

[5]      https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/08/31/remarks-by-president-biden-on-the-end-of-the-war-in-afghanistan/

[6]      https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/04/14/remarks-by-president-biden-on-the-way-forward-in-afghanistan/

[7]   https://www.whitehouse.gov/briefing-room/press-briefings/2021/04/13/background-press-call-

But keeping an eye on whatever remnants remain of al Qaeda does not permit detention authority under domestic or international law. In light of the President's public declarations that the war in Afghanistan is over and al Qaeda no longer poses a threat to the homeland, the government now lacks authority to continue to detain Mr. Paracha. Undersigned counsel did consult with Respondents' counsel and was told that the government's position had not changed — the Respondents maintain the government has authority to continue to detain Mr. Paracha indefinitely.

    **b. Given the end of the war in Afghanistan and the elimination of the threat to the homeland by al Qaeda, the government's authority to detain Mr. Paracha has ended.**

The end of the war in Afghanistan and with al Qaeda marks the end of the government's authority to detain prisoners of war captured in that conflict, including and especially, Saifullah Paracha. The obligation to release and repatriate Mr. Paracha is clear under domestic and international law. The war in Afghanistan is over, and the government has admitted active hostilities with al Qaeda have ceased.

The Geneva Convention Relative to the Treatment of Prisoners of War mandates:

**Prisoners of war shall be released and repatriated without delay after the cessation of active hostilities.**

In the absence of stipulations to the above effect in any agreement concluded between the Parties to the conflict with a view to the cessation of hostilities, or failing any such agreement, each of the Detaining Powers shall itself establish and execute without delay a plan of repatriation in conformity with the principle laid down in the foregoing paragraph.

---

by-a-senior-administration-official-on-afghanistan/

Article 118 of the Geneva Convention (III) Relative to the Treatment of Prisoners of War, Aug. 12, 1949, [1955] 6 U.S.T. 3316, 3406, T.I.A.S. No. 3364. This is a central tenet of the law of war and has been codified for well over 100 years.[8] The cessation of active hostilities is intended to push the detaining authority to release prisoners of war sooner rather than later. The Conventions use the term "active hostilities" instead of the term "conflict" or "state of war" "to distinguish the physical violence of war from the official beginning and end of a conflict, because fighting does not necessarily track formal timelines." *Al–Bihani v. Obama,* 590 F.3d 866, 874 (D.C. Cir. 2010). For this reason, the authorities incorporating Article 118 require only a cessation of active hostilities, not an agreement to cease hostilities, nor complete withdrawal of troops. The sole possible justification for continued captivity is if the prisoner of war has been charged with a crime, convicted, and is serving a sentence. This exception does not apply to Mr. Paracha.

Congress codified the requirement of release at the end of hostilities specifically with respect to the war in Afghanistan and against al Qaeda. The National Defense Authorization Act of 2012 ("NDAA") defines the scope of the United States' detention authority as it pertains to the Authorization for the Use of Military Force. Respondents may only "detain covered persons []pending disposition under the law of war." NDAA § 1021, (b)(1), PL 112-81, December 31, 2011, 125 Stat 1298. This "disposition" is either "detention under the law of war without trial until the end of the hostilities authorized by the Authorization for Use of Military Force," trial, or transfer to the country of origin or other foreign power. *Id.* § 1021(c)(1). Congress did not authorize

---

[8] Article 20 of the Hague Convention (II) on Laws and Customs of War on Land, July 29, 1899, 32 Stat. 1817, required release as soon as possible after "conclusion of peace." The Hague Convention (IV), Oct. 18, 1907, 36 Stat. 2301 also incorporated the requirement of repatriation at the "conclusion of peace" (Art. 20). The Second Geneva Convention, Article 75, July 27, 1929, 47 Stat.2055, too demanded repatriation with the least possible delay after conclusion of peace.

the continued detention of a person at Guantanamo Bay, who has not been charged with a crime, past the cessation of hostilities. Those hostilities have been publicly declared by the President to have ceased. Mr. Paracha's detention is therefore unlawful.

The Supreme Court too has recognized that "detention may last no longer than active hostilities." *Hamdi v. Rumsfeld*, 542 U.S. 507, 520–21 (2004). According to the plurality opinion in *Hamdi*, active hostilities are to be analyzed in connection with "the duration of the *particular conflict* in which they were captured." *Id.* at 518 (O'Connor, J.). The Supreme Court reaffirmed this analytical framework for the government's detention authority in *Boumediene v. Bush,* 553 U.S. 723, 733 (2008).

As of August 31, 2021, there is a political decision on the state of the conflict: the war in Afghanistan is over. Further, the United States has defeated al Qaeda in Afghanistan and there are no active hostilities with al Qaeda, rather the U.S. will simply keep an eye on them.[9] That al Qaeda remains an enemy of the United States is in no way equivalent of being in a state of active hostilities with them in Afghanistan or elsewhere. The only permissible justification for detention is "to prevent a combatant's return to the battlefield." *Hamdi*, 542 U.S. at 519. Mr. Paracha was never on the battlefield. But regardless, there is no longer a battlefield at all.

In these circumstances, release is required under the law of armed conflict. According to the Commentary on the Third Geneva Convention, the cessation of hostilities can manifest by a definitive demobilization and withdrawal of troops or the defeat or general demobilization of one party, even if sporadic or isolated fighting by remnants of the capitulating party continued. Geneva

---

[9] *See* https://www.whitehouse.gov/briefing-room/press-briefings/2021/04/13/background-press-call-by-a-senior-administration-official-on-afghanistan/ (Senior administration official: "we are not taking our eye off of the terrorist threat or signs of al Qaeda's resurgence.")

Convention (III), Art. 118, Commentary of 2020, 4456, 57. The mere possibility of the resumption of hostilities is an insufficient reason to delay repatriation. *Id*. at 4555.

This ground differs from previous challenges in which detainees have alleged that the war in Afghanistan is over. Here, President Biden has firmly stated that "we will not stay involved in Afghanistan militarily" and that withdrawal will be complete by September 11, 2021.[10] Unlike in *al-Alwi*, the U.S. military will not engage in counterterrorism activities of the kind that prevented a determination that active hostilities had ceased in 2017. 236 F. Supp. 3d 417, 422 (D.D.C. 2017). And, the United States has entered into an agreement with the Taliban, which the Executive has agreed to enforce:

> I inherited a diplomatic agreement, duly negotiated between the government of the United States and the Taliban, that all U.S. forces would be out of Afghanistan by May 1, 2021, just three months after my inauguration. That's what we inherited — that commitment.[11]

There can be no clearer indication that the war is officially over, and with it, any defensible theory that the United States may force Mr. Paracha to live out his days in a cell in Guantanamo Bay. Given the end of active hostilities in Afghanistan and against al Qaeda, and given the fact that Mr. Paracha has already been cleared for release, the government's authority to detain Mr. Paracha has ended.

---

[10]     https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/08/31/remarks-by-president-biden-on-the-end-of-the-war-in-afghanistan/

[11]     https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/08/31/remarks-by-president-biden-on-the-end-of-the-war-in-afghanistan/

### c. The Court in *Gul* erroneously concluded "active hostilities" remain against al Qaeda.

District Court Judge Amit Mehta recently rejected a similar argument in *Gul v. Biden*, 2021 U.S. Dist. LEXIS 216737 (D.C.D. Oct. 18, 2021). In denying Gul's motion for immediate release, Judge Mehta accepted the government's argument that the "United States is still engaged in active operations against al Qaeda and its dispersed network of regional affiliate." *Id*. at * 13. But the Court cannot broaden the Authorization for Use of Military Force (AUMF). Pub. L. No. 107-40, § 2(a), 115 Stat 224 (2001), to the broader concept of "active operations" or cover "affiliates."

First, by adopting the government's argument that detention authority remains based on "active operations" broadens the detention authority beyond Congress' intention. Under the NDAA, detention is only permitted "until the end of hostilities authorized by the AUMF." NDAA, § 1021(c)(1). As previously noted, "It is a clearly established principle of the law of war that detention may last no longer than active hostilities." *Hamdi*, 542 U.S. at 520. The government's argument seeks to allow for perpetual detention as long as any intelligence or military interest remains. That is untenable and unlawful under the plain language of the AUMF and NDAA and under binding Supreme Court precedent. Therefore, this Court should reject the reasoning in *Gul* and grant relief.

Second, Mr. Paracha does not dispute al Qaeda is an organization covered by the AUMF. However, the plain language of that statute does not cover organizations that were later formed or those who simply share the same ideology as al Qaeda. The AUMF's authorization to detain is limited to organizations that "planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001." The Court in *Gul* erroneously expanded the scope of the AUMF's detention authority to cover active hostilities against al Qaeda affiliates, instead of

9

limiting its analysis to the al Qaeda that planned, authorized, committed, or aided the September 11 attacks. This Court should reject the district court's decision in *Gul* and find that Mr. Paracha is entitled to relief based on the end of hostilities.

**III.     Mr. Paracha's clearance for release through the PRB is a binding ruling of the President and eliminates the AUMF as a valid basis for his continued detention.**

By the terms of the AUMF, § 2(a), it is the president who has authority to "use all necessary and appropriate force . . . to prevent any future acts of international terrorism against the United States." The Periodic Review Board's determination that Mr. Paracha's continued detention is not warranted is, in effect, the President's decision that it is not necessary or appropriate force to continue to detain Mr. Paracha.

Under 3 U.S.C. § 301, the president has authority to delegate to the head of any department, or to any official appointed subject to Senate approval, "any function which is vested in the President by law," subject to the requirement that the delegation be published in the Federal Register. In 2011, Executive Order 13567 created the PRB to review the president's "continued, discretionary exercise of existing detention authority in individual cases." Exec. Order No. 13567, § 9(d), 3 C.F.R. 13567 (2011). As a result, review of individual detainees was delegated to the PRB. *Id.* at § 1(b). In 2018, Executive Order 13823, § 2(e), 3 C.F.R. 13823 (2018), continued the authority of the PRB to examine individual cases "to determine whether continued law of war detention is necessary to protect against a significant threat to the security of the United States." Both these orders provided that the president's final authority to determine who should be held under the AUMF was delegated no further down the line than to the Review Committee of cabinet members and two other Senate-approved officials. *See* Exec. Order No. 13567, § 9(d). Therefore, the May 2021 PRB decision as to Saifullah Paracha declaring, "After Review Committee action

and under Exec. Order No. 13567, it was determined that continuing law of war detention is no longer necessary" was the final action of the President and the executive branch terminating all authority to hold Mr. Paracha further.

Respondents may argue that this is not a ground for habeas relief because the language of Exec. Order 13567, § 8, states that PRB findings "[do] not address the legality of any detainee's law of war detention." *See Nasser v. Obama*, 234 F. Supp. 3d 121, 124 (D.C.D. 2017) (relying on §8 language to find that PRB clearance is not a basis for habeas relief). Yet clearance for release under the PRB is a decision by the President (through cabinet-level delegation) that it is not necessary or appropriate force to continue to detention. Further, the D.C. Circuit Court of Appeals and judges in the D.C. District Court have pointed to PRB proceedings where a petitioner was not cleared as a basis for determining he is too unsafe to release and that a habeas petition should be denied. *E.g., Ali v. Trump*, 959 F.3d 364, 371 (D.C. Cir. 2020) ("the fact that hostilities have endured for a long time, without more, does not render the government's continued detention of Ali a shock to the conscience, in light of the dangers the Periodic Review Board has found to be associated with his release"). The PRB cannot be relevant to continued detention in one case and not relevant in another. Thus, Mr. Paracha's clearance or release is an independent ground for relief.[12]

---

[12] In the denial of his petition for habeas corpus, this Court rejected Mr. Paracha's argument that future dangerousness was a factor for the Court to consider when determining if his detention was consistent with the laws of war. (R. 555: Unclassified Denial of Habeas, PageID 19-20). Mr. Paracha has maintained his argument on appeal and submits his recent clearance for release is further evidence in support of his argument. To the extent the government argues Mr. Paracha's clearance for release by the PRB is not relevant to its authority to detain him, this position is inconsistent with cases in which the detainee is not cleared.

IV. **The government has not complied with Executive Order No. 13567.**

Executive Order No. 13567, § 4(a), requires that where a final determination has been made by the PRB, "the Secretaries of State and Defense shall be responsible for **ensuring that vigorous efforts are undertaken to identify a suitable transfer location** for any such detainee. . ." (Emphasis added).[13] Mr. Paracha has been cleared for transfer for seven months. His home country of Pakistan has been unequivocal that it desires his return. He has family willing and able to care for and support him upon release. And yet, Mr. Paracha remains in Guantanamo Bay. It is clear the government has not made the "vigorous efforts" for repatriation as required by presidential order. Mr. Paracha is entitled to a writ of habeas corpus ordering his return to Pakistan effective immediately.

---

[13] It is noteworthy that this issue came up during the oral argument in *Al-Hela v. Trump*, D.C. Cir. Case No. 19-5079, which took place on Sept. 30, 2021.

## V. Conclusion

Wherefore, Petitioner respectfully requests the Court grant Mr. Paracha a writ of habeas corpus ordering that he be immediately repatriated to his home country, Pakistan.

Dated: December 14, 2021

        Respectfully submitted,

        STEPHEN C. NEWMAN
        Federal Public Defender

        /s/ *Claire R. Cahoon*
        CLAIRE R. CAHOON
        Assistant Federal Public Defender
        Ohio Bar No. 0082335
        617 Adams Street
        Toledo, Ohio 43604
        Phone: (419) 259-7370; Fax: (419) 522-4321
        claire_cahoon@fd.org

        /s/ *Catherine Adinaro Shusky*
        CATHERINE ADINARO SHUSKY
        Attorney at Law
        Ohio Bar No. 0088731
        1660 W. 2nd Street, Suite 750
        Cleveland, Ohio 44113
        Phone: (216) 522-4856; Fax: (216) 522-4321
        cathi_shusky@fd.org

        /s/ *Gaillard T. Hunt*
        GAILLARD T. HUNT
        Attorney at Law
        D.C. Bar No. 089375
        10705 Tenbrook Drive
        Silver Springs, MD 20901
        Phone: 301-530-2807; Fax: 301-564-6059
        gthunt@mdo.net

        Counsel for Petitioner Saifullah Paracha