Filed with the Classified
Information Security Officer
CISO _Almqut J. Knappen_
Date _07/01/2022_

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                       )
SAIFULLAH PARACHA,                     )
                                       )
            Petitioner,                )
                                       )
      v.                               )     Civil Action No. 04-2022 (PLF)
                                       )
JOSEPH R. BIDEN, JR., et al.,          )
                                       )
            Respondents.               )
_____)
                                       )
SAIFULLAH PARACHA,                     )
                                       )
            Petitioner,                )
                                       )
      v.                               )     Civil Action No. 21-2567 (PLF)
                                       )
JOSEPH R. BIDEN, JR., et al.,          )
                                       )
            Respondents.               )
_____)
```

## OPINION

Petitioner Saifullah Paracha, a Pakistani national, is a detainee at the United States

Naval Station at Guantanamo Bay, Cuba. On January 23, 2020, this Court denied Mr. Paracha's

first petition for habeas corpus. Paracha v. Trump ("Paracha II"), 453 F. Supp. 3d 168, 172-76,

198-228 (D.D.C. 2020), appeal docketed sub nom. Paracha v. Biden, No. 20-5039 (D.C. Cir.).

On October 2, 2021, Mr. Paracha filed a second petition for habeas corpus and other relief in a

separate civil action, and he subsequently filed three additional motions for discovery and a more

definite statement. Mr. Paracha's two civil habeas actions now have been consolidated by the

Court, and his motions and respondents' motion to dismiss are fully briefed.

On June 6, 2022, after careful consideration of the parties' briefs, the relevant

legal authorities, and the entire record in these consolidated cases, the Court denied Mr.

Paracha's second petition for habeas corpus and other relief, as well as his motions for discovery

and a more definite statement, and granted respondents' motion to dismiss. See Order, Civil

Action No. 21-2567 [Dkt. No. 41], appeal docketed, No. 22-5186 (D.C. Cir.). This Opinion

explains the reasoning underlying that Order.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

The detailed factual and procedural background of these consolidated cases are

recounted along with numerous findings of fact in the Court's prior Opinion denying Mr.

Paracha's first petition for habeas corpus. See Paracha II, 453 F. Supp. 3d at 172-76, 198-228.

The Court sets forth here the facts and procedural background relevant to Mr. Paracha's second

---

[1]     In connection with the pending motions, the Court has reviewed the following
filings, including the exhibits attached thereto: Petition for Habeas Corpus and Other Relief ("2d
Habeas Pet."), Civil Action No. 21-2567 [Dkt. No. 1]; Supplement to the Petition for Writ of
Habeas Corpus Based on Newly Available Grounds for Relief ("2d Habeas Pet. Suppl."), Civil
Action No. 04-2022 [Dkt. No. 563]; Respondents' Return to Supplemental Petition for Writ of
Habeas Corpus Based on Newly Available Grounds ("2d Habeas Pet. Return"), Civil Action No.
04-2022 [Dkt. No. 569]; Motion to Dismiss Petition for "Other Relief" (Counts III-VI) ("Mot. to
Dismiss"), Civil Action No. 21-2567 [Dkt. No. 22]; Petitioner's Answer to Respondents' Motion
to Dismiss Petition for Other Relief, Counts III Through VI ("Pet. Reply to Mot. to Dismiss"),
Civil Action No. 21-2567 [Dkt. No. 26]; Respondents' Reply in Support of Their Motion to
Dismiss the Petition for "Other Relief" (Counts III-VI), Civil Action No. 21-2567 [Dkt. No. 27];
Petitioner's Motion for Order to Show Cause re Discovery ("Mot. to Show Cause"), Civil Action
No. 21-2567 [Dkt. No. 11]; Petitioner's Motion for More Definite Statement ("Mot. for More
Def. Stmt."), Civil Action No. 21-2567 [Dkt. No. 12]; Petitioner's Renewed Motion for
Discovery ("Mot. for Discov."), Civil Action No. 21-2567 [Dkt. No. 13]; Respondents'
Opposition to Petitioner's Motion for an Order to Show Cause re Discovery, Motion for a More
Definite Statement, and Renewed Motion for Discovery, Civil Action No. 21-2567 [Dkt. No.
23]; and Petitioner's Reply in Support of his Motions for Discovery and for a More Definite
Statement ("Pet. Reply ISO Discov. Mots."), Civil Action No. 21-2567 [Dkt. No. 25].

2

petition for habeas corpus and other relief and his accompanying motions for discovery and a more definite statement.

Mr. Paracha is a Pakistani national who was apprehended by the United States in July 2003 "on the belief that he had provided financial and other support to members of the Taliban and Al-Qaeda over the course of several years immediately before and after the terrorist attacks of September 11, 2001." Paracha II, 453 F. Supp. 3d at 171-72; see 2d Habeas Pet. ¶¶ 1, 6. In September 2004, Mr. Paracha was transferred from Bagram Air Force Base in Afghanistan to the United States Naval Base at Guantanamo Bay, Cuba, where he has been continuously detained since. See Paracha II, 453 F. Supp. 3d at 174; 2d Habeas Pet. ¶ 7. He has never been charged before a military commission or transferred for trial before another competent tribunal. See Paracha II, 453 F. Supp. 3d at 174.

In November 2004, Mr. Paracha filed his first petition for habeas corpus. See Petition for Habeas Corpus, Civil Action No. 04-2022 [Dkt. No. 1]; see also Amended Petition for Habeas Corpus, Civil Action No. 04-2022 [Dkt. No. 11]. Over the next fifteen years, during which the case was stayed on two occasions for substantial periods of time, this Court resolved several potentially dispositive motions and numerous procedural matters that were raised by the parties. See Paracha II, 453 F. Supp. 3d at 175. Notable for present purposes, the Court denied Mr. Paracha's third motion for summary judgment in June 2016, concluding that it lacked jurisdiction to consider Mr. Paracha's claim that certain statutes concerning detainees were unconstitutional bills of attainder. See Paracha v. Obama ("Paracha I"), 194 F. Supp. 3d 7, 11 (D.D.C. 2016) (noting that, even if Mr. Paracha had Article III standing to pursue his claim, the claim would be barred by 28 U.S.C. § 2241(e)(2) as one that "do[es] not sound in habeas" (quoting Aamer v. Obama, 742 F.3d 1023, 1030 (D.C. Cir. 2014))).

3

In October and November 2019, after the parties concluded their discovery and the Court had resolved several pre-hearing disputes, the Court held a nine-day evidentiary hearing on Mr. Paracha's first petition for habeas corpus. See Paracha II, 453 F. Supp. 3d at 176. On January 23, 2020, based on the evidence presented by the parties during that hearing, the Court found that "Mr. Paracha assisted Taliban fighters by helping them to secure equipment and by providing direct financial support" and that he worked with known Al-Qaeda members "to spread [Al-Qaeda's] message with video recordings and a press release," to "safeguard[] substantial sums of Al-Qaeda money on two occasions," and to "help[] Al-Qaeda's plan to bring one of its agents to the United States." Id. at 229-30. Based on these factual findings, the Court concluded as a matter of law that Mr. Paracha had provided substantial support to both the Taliban and Al-Qaeda that was sufficient to establish the government's legal authority to detain him under the 2001 Authorization for Use of Military Force ("AUMF"), Pub. L. No. 107-40, 115 Stat. 224 (codified at 50 U.S.C. § 1541 note), and the National Defense Authorization Act for Fiscal Year 2012 ("2012 NDAA"), Pub. L. No. 112-81, § 1021, 125 Stat. 1298, 1562 (codified at 18 U.S.C. § 801 note). See Paracha II, 453 F. Supp. 3d at 230, 235-36. The Court therefore denied Mr. Paracha's first petition for habeas relief. See id. at 237.

Mr. Paracha has appealed this Court's ruling, see Notice of Appeal, Civil Action No. 04-2022 [Dkt. No. 550], and the appeal is currently being held in abeyance pending the D.C. Circuit's en banc decision in Al Hela v. Biden, No. 19-5079 (D.C. Cir.). See Order, Paracha v. Biden, No. 20-5039 (D.C. Cir. June 2, 2021) (per curiam).

On October 2, 2021, Mr. Paracha filed a second petition for habeas corpus and other relief in a new civil action. See 2d Habeas Pet. Two key developments underlie Mr. Paracha's claims for habeas relief therein. First, on May 13, 2021, the Periodic Review Board

4

("PRB") determined that "continued law of war detention [of Mr. Paracha] is no longer necessary to protect against a continuing significant threat to the security of the United States." See Exhibit 9 – Unclassified Summary of Final Determination ("Gov't Ex. 9"), Civil Action No. 04-2022 [Dkt. No. 569-10] at 2; see also 2d Habeas Pet. ¶ 11.  Second, on August 31, 2021, the U.S. Armed Forces completed their withdrawal from Afghanistan.  See 2d Habeas Pet. ¶ 10; see also Gul v. Biden, Civil Action No. 16-1462, 2021 WL 5206199 (D.D.C. Nov. 9, 2021).  Mr. Paracha argues that both developments independently deprive respondents of the legal authority to detain him.  See 2d Habeas Pet. Suppl. at 3.  He separately raises four additional claims for "other relief."  See 2d Habeas Pet. at 6-10.[2]

On October 4, 2021, Mr. Paracha moved in the D.C. Circuit "for a limited remand" of the appeal of Paracha II for consideration of the same two claims for habeas relief raised in Mr. Paracha's second petition for habeas corpus, which he argued "were not available at the time the petition was filed, litigated, and decided."  Appellant's Motion for Limited Remand and Continuance of the Stay of His Appeal, Paracha v. Biden, No. 20-5039, at 1-2 (D.C. Cir. Oct. 4, 2021).  On November 12, 2021, finding that "permitting Mr. Paracha to pursue parallel habeas proceeding involving overlapping grounds for relief . . . would not serve the interests of judicial economy," this Court held Mr. Paracha's second petition for habeas corpus and other relief in abeyance until the court of appeals ruled on his motion for limited remand. Paracha v. Biden, Civil Action No. 21-2567, 2021 WL 5279613, at *2 (D.D.C. Nov. 12, 2021). The Court also held in abeyance three motions for discovery and a more definite statement that

---

[2]        Page number citations to documents that the parties have filed refer to those that the Court's electronic case filing system automatically assigns.

were filed by Mr. Paracha to aid his substantive claims for relief. See id.; see also Mot. to Show
Cause; Mot. for More Def. Stmt.; Mot. for Discov.

On December 10, 2021, the D.C. Circuit ordered a limited remand of Paracha II
"so appellant can present to the district court in the first instance his arguments concerning the
withdrawal of United States troops from Afghanistan and the announced end of the war there,
and his clearance for release by the Periodic Review Board." Order at 1, Paracha v. Biden,
No. 20-5039 (D.C. Cir. Dec. 10, 2021). On December 30, 2021, having before it two habeas
petitions that each raised seemingly identical claims for habeas relief, this Court consolidated
Mr. Paracha's two civil actions for habeas relief and set forth a briefing schedule for Mr.
Paracha's pending petitions and motions. See Paracha v. Biden, Civil Action No. 21-2567, 2021
WL 6196990, at *2 (D.D.C. Dec. 30, 2021). The parties have completed their briefing in these
consolidated cases.

## II.  CLAIMS FOR HABEAS RELIEF

Because this Court previously determined that Mr. Paracha provided substantial
support to the Taliban and Al Qaeda such that he can be lawfully detained under the AUMF, see
Paracha II, 453 F. Supp. 3d at 235-36, he does not presently dispute that the government had the
initial authority to detain him.  Instead, Mr. Paracha argues that the authority to detain him has
lapsed.  He first maintains that respondents no longer have the legal authority to detain him
because "the war with Afghanistan and Al Qaeda has ended." 2d Habeas Pet. Suppl. at 1.  Next,
he contends that there is no longer legal authority to detain him "because the U.S. Government,
in clearing him for release through the [PRB], has determined his continued detention is no
longer necessary under the law of war." Id.  After careful consideration of the applicable legal

6

standard, the parties' arguments, and classified and unclassified materials filed in support, the

Court denied each claim for habeas relief by Order of June 6, 2022.

### A. Legal Standard

The legal authority to detain Mr. Paracha derivers from the AUMF, Pub. L. No.

107-40, 115 Stat. 224 (codified at 50 U.S.C. § 1541 note).  See Paracha II, 453 F. Supp. 3d

at 176.  Enacted within a week of the terrorist attacks of September 11, 2001, the AUMF

authorizes the President

> to use all necessary and appropriate force against those nations,
> organizations, or persons he determines planned, authorized,
> committed, or aided the terrorist attacks that occurred on
> September 11, 2011, or harbored such organizations or persons, in
> order to prevent any future acts of international terrorism against
> the United States by such nations, organizations or persons.

Pub. L. No. 107-40, § 2(a), 115 Stat. 224, 224.  The "detention of individuals . . . , for the

duration of the particular conflict in which they were captured, is so fundamental and accepted

an incident to war as to be an exercise of the 'necessary and appropriate force' Congress has

authorized the President to use."  Hamdi v. Rumsfeld, 542 U.S. 507, 518 (2004) (plurality

opinion).

The "most current and precise statement of the government's detention authority"

under the AUMF is found in the 2012 NDAA, Pub. L. No. 112-81, § 1021, 125 Stat. at 1562

(codified at 18 U.S.C. § 801 note).  Paracha II, 453 F. Supp. 3d at 178.  That statute affirms that

the President's authority pursuant to the AUMF "to use all necessary and appropriate force"

includes the authority "to detain covered persons . . . pending disposition under the law of war."

Pub. L. No. 112-81, § 1021(a), 125 Stat. at 1562.  The 2012 NDAA defines a "covered person"

to include "any person . . . who was a part of or substantially supported al-Qaeda, the Taliban, or

7

associated forces that are engaged in hostilities against the United States or its coalition

partners." Id. § 1021(b)(2), 125 Stat. at 1562; see Ali v. Obama, 736 F.3d 542, 544 n.1 (D.C.

Cir. 2013). And "[d]etention under the law of war" is permitted "until the end of the hostilities

authorized by the [AUMF]." Al-Alwi v. Trump, 901 F.3d 294, 297 (D.C. Cir. 2018) (quoting

Pub. L. No. 112-81, § 1021(c)(1), 125 Stat. at 1562)); see Uthman v. Obama, 637 F.3d 400, 402

(D.C. Cir. 2011); see also Hamdi v. Rumsfeld, 542 U.S. at 520 (plurality opinion) ("It is a clearly

established principle of the law of war that detention may last no longer than active hostilities."

(citing Article 118 of the Geneva Convention (III) Relative to the Treatment of Prisoners,

Aug. 12, 1949, 6 U.S.T. 3316, 3406)).

        A Guantanamo detainee may challenge the United States' authority to detain him

pursuant to the AUMF by filing a petition for habeas corpus, over which courts in this District

have jurisdiction. See Paracha II, 453 F. Supp. 3d at 177 (first citing Boumediene v. Bush, 553

U.S. 723 (2008); then citing Rasul v. Bush, 542 U.S. 466 (2004)); see also Ahjam v. Obama, 37

F. Supp. 3d 273, 278 (D.D.C. 2014) ("The writ of habeas corpus remains the sole means by

which Guantanamo detainees may challenge the legality of their detention."). "In exercising its

habeas jurisdiction over detainees at Guantanamo Bay, the Judicial Branch 'serv[es] as an

important . . . check on the Executive's discretion in the realm of detentions.'" Al-Qahtani v.

Trump, 443 F. Supp. 3d 116, 121-22 (D.D.C. 2020) (alteration in original) (internal citations

omitted) (quoting Hamdi v. Rumsfeld, 542 U.S. 507, 536 (2004) (plurality opinion)). The

government bears the burden of proving by a preponderance of the evidence that Mr. Paracha's

detention is unlawful. See Case Management Order, Civil Action No. 04-2022 [Dkt. No. 204]

at 4; accord Ali v. Trump, 317 F. Supp. 3d 480, 484 (D.D.C. 2018).

8

> ### B. Count One: Legal Effect of the U.S. Armed Forces' Withdrawal from
> ### Afghanistan

In his first claim for habeas corpus, Mr. Paracha argues that the withdrawal of

U.S. troops from Afghanistan in August 2021 "terminat[ed] all authority to hold" him under the

AUMF.  2d Habeas Pet. ¶ 12; see 2d Habeas Pet. Suppl. at 3 ("Detention authority over prisoners

of war is by law coterminous with the war itself.  Because the war in Afghanistan and with al

Qaeda is over, the authority to detain Saifullah Paracha has now expired.").  It is undisputed that

the United States completed the withdrawal of its military forces from Afghanistan on

August 31, 2021, see Gul v. Biden, 2021 WL 5206199, at *1; see also Remarks by President

Biden on the End of the War in Afghanistan (Aug. 31, 2021), https://www.whitehouse.gov/

briefing-room/speeches-remarks/2021/08/31/remarks-by-president-biden-on-the-end-of-the-war-

in-afghanistan, but Mr. Paracha overstates the legal import of that withdrawal.  "The AUMF

authorizes detention for the duration of the conflict between the United States and the Taliban

and al Qaeda."  Al-Alwi v. Trump, 901 F.3d at 299; accord Ali v. Trump, 317 F. Supp. 3d

at 486.  This Court concludes, as did Judge Mehta recently, that the United States is still engaged

in active hostilities with Al Qaeda and that "[t]he Government's authority to detain [Mr.

Paracha] pursuant to the AUMF has not terminated."  Gul v. Biden, 2021 WL 5206199, at *4

(quoting Al-Alwi v. Trump, 901 F.3d at 300).[3]

---

[3]     Mr. Paracha is incorrect that the United States' detention authority under the
AUMF is "coterminous" with the war in Afghanistan.  See 2d Habeas Pet. Suppl. at 3.  By its
statutory text, the AUMF broadly authorizes the United States to "use all necessary and
appropriate force against those nations, organizations, or persons [it] determines planned,
authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or
harbored such organizations or persons."  AUMF, Pub. L. No. 107-40, § 2(a), 115 Stat. at 224.
In contrast to other authorizations for the use of force, the AUMF contains no reference to
Afghanistan or any geographical limitations on the use of force authorized therein.  Compare id.,
with Authorization for Use of Military Force Against Iraq Resolution of 2002, Pub. L. No. 107-
243, § 3(a)(1), 116 Stat. 1498, 1501 (codified at 50 U.S.C. § 1541 note) (authorizing the use of

"The determination of when hostilities have ceased is a political decision, and [the Court] defer[s] to the Executive's opinion on the matter, at least in the absence of an authoritative congressional declaration purporting to terminate the war." Al-Bihani v. Obama, 590 F.3d 866, 874 (D.C. Cir. 2010); see also Al-Alwi v. Trump, 901 F.3d at 299 ("If the 'life of a statute' conferring war powers on the Executive 'is defined by the existence of a war, Congress leaves the determination of when a war is concluded to the usual political agencies of the Government." (quoting Ludecke v. Watkins, 335 U.S. 160, 169 n.13 (1948))). The Court will defer to the Executive Branch's representations about ongoing hostilities between the United States and Al Qaeda if they are adequately supported by the record evidence. See Al-Alwi v. Trump, 901 F.3d at 299; see also Ali v. Trump, 317 F. Supp. 3d at 487; Gul v. Biden, 2021 WL 5206199, at *3-4.

Applying this deferential standard, the Court concludes that the record clearly establishes that the United States continues to be engaged in active hostilities with Al Qaeda and its associated forces.[4] To date, numerous officials of the Executive Branch have reaffirmed that

---

force to "defend the national security of the United States against the continuing threat posed by Iraq"). Moreover, the case law confirms that the authority to detain under the AUMF is tethered to there being active hostilities between the United States and the Taliban and Al Qaeda – not to an ongoing conflict in Afghanistan. See Gul v. Biden, 2021 WL 5206199, at *2-3; Al-Alwi v. Trump, 901 F.3d at 299; Aamer v. Obama, 742 F.3d at 1041; Al-Bihani v. Obama, 590 F.3d at 871-72.

[4]     Mr. Paracha substantially relies on the Third Geneva Convention to argue that he is entitled to be released and repatriated because active hostilities have ceased. See 2d Habeas Pet. Suppl. at 5-8; see also Commentary of 2020 to the Geneva Convention (III) Relative to the Treatment of Prisoners, art. 118, cmt. 4456 ("A clear indication that hostilities have ended would be the total defeat, capitulation or general demobilization of one Party, even if there are isolated or sporadic acts of violence by remnants of that Party."). Although "the international laws of war are helpful to courts when identifying the general set of war powers to which the AUMF speaks," Al-Bihani v. Obama, 590 F.3d at 871, they do not displace courts' deference to the political branches to determine when hostilities have concluded. See Al-Alwi v. Trump, 901 F.3d at 299; see also Al-Bihani v. Obama, 590 F.3d at 872 (noting that courts rely on "the text of

10

hostilities with Al Qaeda and its affiliates have not ceased. On September 28, 2021, Defense

Secretary Lloyd Austin testified before the Senate Armed Services Committee that "there are

remnants of Al-Qaeda still in Afghanistan." Respondents' Exhibit 4 – Transcript of September

28, 2021 Senate Armed Services Committee Hearing [Dkt. No. 569-5] at 70. In the same

hearing, General Mark Milley, Chairman of the Joint Chiefs of Staff, testified that "Al Qaida is

in Afghanistan" and "have aspirations to reconstitute and if they develop the capability . . . to

strike." Id. And on December 7, 2021, Deputy Assistant Secretary of Defense for Irregular

Warfare and Counterterrorism Milancy Harris testified before the House Subcommittee on

National Security:

> While [the United States] ha[s] significantly degraded the terrorist
> threat with the last 20 years of sustained pressure, we still face a
> potent challenge. The terrorist threat to the U.S. homeland from
> externally directed attacks is at its lowest since 9/11, but we still
> face a number of terrorist groups committed to targeting U.S.
> interests and personnel abroad.

Respondents' Exhibit 5 – Transcript of December 7, 2021 House Subcommittee on National

Security Hearing [Dkt. No. 569-6] at 9.

These representations are supported by respondents' classified and unclassified

submissions, which detail the United States' ongoing activities against Al Qaeda. Major General

Dagvin R.M. Anderson, Vice Director for Operations for the Office of the Chairman of the Joint

Chiefs of Staff, avers that "[t]he United States has deployed forces to conduct counterterrorism

operations against Al-Qaeda and associated forces, and additionally to advise, assist, and

accompany security forces of select foreign partners on such counterterrorism operations."

---

relevant statutes and controlling domestic caselaw" to determine the scope of the United States'
detention authority under the AUMF). The Court therefore proceeds by confirming that the
record evidence supports the Executive Branch's representation that hostilities with Al Qaeda are
ongoing.

11

Classified Declaration of Dagvin R.M. Anderson ("Anderson Decl.") ¶ 7.



see also Respondents' Exhibit 8 – August 27, 2021 USCENTCOM

Statement [Dkt. No. 569-9] at 2 (announcing an unmanned airstrike in Afghanistan that was

believed to have killed an ISIS-Khorasan planner).



12

Respondents' Exhibit 7 – October 22, 2021 USCENTCOM Statement [Dkt. No. 569-8] at 2

(announcing an airstrike in northwest Syria that was believed to have killed a senior Al Qaeda

leader). Thus, the record "manifests" that the United States remains actively engaged in

hostilities with Al Qaeda and its associated forces. Gul v. Biden, 2021 WL 5206199, at *4

(quoting Al-Alwi v. Trump, 901 F.3d at 300).

     Mr. Paracha argues that this evidence demonstrates only that the United States is

"simply keep[ing] an eye on" Al Qaeda, not that the two are engaged in active hostilities. 2d

Habeas Pet. Suppl. at 7; see also id. ("That al Qaeda remains an enemy of the United States is in

no way equivalent of being in a state of active hostilities with them in Afghanistan or

elsewhere."). The Court disagrees.



see also Classified Declaration of

("DIA Decl.") ¶ 4 (noting that "[c]ounterterrorism efforts removed several

of al-Qa'ida's senior leaders from the battlespace").

see DIA Decl. ¶ 5

13

(noting that AQIS "is likely to gain from [the] Taliban's resurgence in Afghanistan");

Accordingly, the Court concludes that hostilities between the United States and Al Qaeda are ongoing, regardless of any "change in the form of hostilities." Al-Alwi v. Trump, 901 F.3d at 300. The United States' detention authority is not "cut[] off." Id.

### C. *Count Two: Legal Effect of the PRB's Clearance for Release*

As an independent ground for habeas relief, Mr. Paracha argues that the PRB's May 13, 2021 determination "that continued law of war detention [of Mr. Paracha] is no longer necessary to protect against a continuing significant threat to the security of the United States," Gov't Ex. 9 at 2, terminated all legal authority to detain him. See 2d Habeas Pet. Suppl. at 10-11. The Court disagrees.

The Periodic Review Board was created by Executive Order to ensure that the military detention of individuals at Guantanamo Bay Naval Base "continues to be carefully evaluated and justified, consistent with the national security and foreign policy interests of the United States and the interests of justice." Exec. Order No. 13,567, 76 Fed. Reg. 13,277, 13,277 (Mar. 7, 2011). It is composed of senior officials appointed by the Departments of State, Defense, Justice, and Homeland Security; and the Offices of the Director of National Intelligence and the Chairman of the Joint Chiefs of Staff. See id. § 9(b), 76 Fed. Reg. at 13,280; see also Nasser v. Obama, 234 F. Supp. 3d 121, 123 n.1 (D.D.C. 2017). Pursuant to its authorizing Executive Order, the PRB "review[s] on a periodic basis the executive branch's continued, discretionary exercise of existing detention authority in individual cases." Exec. Order No. 13,567, § 1(b), 76 Fed. Reg. at 13,277; see Al-Alwi v. Trump, 901 F.3d at 296. And "[c]ontinued law of war detention is warranted . . . if it is necessary to protect against a

14

significant threat to the security of the United States." Exec. Order No. 13,567, § 2, 76 Fed. Reg. at 13,277.

Importantly, as noted by both parties, the PRB process "does not address the legality of any detainee's law of war detention." Exec. Order No. 13,567, § 8, 76 Fed. Reg. at 13,280 (emphasis added). Instead, its purpose is "to make discretionary determinations" and non-binding recommendations regarding the appropriateness of detention in light of the detainee's "continuing threat to the security of the United States." 2012 NDAA, Pub. L. No. 112-81, § 1023(b)(1)-(2), 125 Stat. at 1564; accord Barhoumi v. Obama, 234 F. Supp. 3d 84, 88 n.3 (D.D.C. 2017). Whether the United States has the legal authority to detain an individual under the AUMF, in contrast, turns on whether the individual is "determined to have been part of [or substantially supported] Al Qaeda, the Taliban, or associated forces, and so long as hostilities are ongoing." Aamer v. Obama, 742 F.3d at 1041; see 2012 NDAA, Pub. L. No. 112-81, § 1021(a), 125 Stat. at 1562; see supra Section II.A.[5]

Thus, the PRB's decision to recommend Mr. Paracha for release simply is irrelevant to the question whether there is legal authority to detain him under the AUMF. See Nasser v. Obama, 234 F. Supp. 3d at 124 (denying request for habeas corpus that was based on the PRB's determination that "continued law of war detention" of the petitioner was unnecessary "to protect against a continuing significant threat to the security of the United States"); see also Awad v. Obama, 608 F.3d 1, 11 (D.C. Cir. 2010) ("Whether a detainee would pose a threat to

---

[5]    It is uncontested that the PRB exercises authority delegated by the President when it makes recommendations for release. See 2d Habeas Pet. Return at 39. Even so, the PRB's determinations are explicitly unrelated to the legality of detention under the AUMF, see Exec. Order No. 13,567, § 8, 76 Fed. Reg. at 13,280, and contrary to Mr. Paracha's suggestion, are not "the final action of the President and the executive branch terminating all authority to hold [detainees] further," 2d Habeas Pet. Suppl. at 10-11.

15

U.S. interests if released is not at issue in habeas corpus proceedings in federal courts concerning aliens detained under the authority conferred by the AUMF."); Almerfedi v. Obama, 654 F.3d 1, 4 n.3 (D.C. Cir. 2011) ("[W]hether a detainee has been cleared for release is irrelevant to whether a petitioner may be detained lawfully."); cf. Barhoumi v. Obama, 234 F. Supp. 3d at 88-89 (denying petitioner's emergency motion for order effecting release after concluding that the PRB's recommendation for release did not create a legally-enforceable right).

Mr. Paracha is not entitled to a writ of habeas corpus on the ground that the PRB recommended that he be released from detention.

### III.  CLAIMS FOR OTHER RELIEF

In addition to his two claims for habeas relief discussed above, Mr. Paracha raises four claims for "other relief" in his second petition for habeas corpus. See 2d Habeas Pet. at 6-10.  Respondents have moved to dismiss each claim, citing a lack of jurisdiction and standing, among other arguments. See Mot. to Dismiss at 2-13.[6]  For the reasons set forth below, the Court agrees and therefore has dismissed all four claims for "other relief."

---

[6]    The Court presumes that respondents seek dismissal of Mr. Paracha's claims as a matter of law for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(1), (6); see Does v. Bush, Civil Action No. 05-0313, 2006 WL 3096685, at *2-3 (D.D.C. Oct. 31, 2006) (noting that "motions to dismiss have been and may be employed in habeas proceedings"); FED. R. CIV. P. 81(a)(4); cf. Rule 12 of the Rules Governing Section 2255 Proceedings for the United States District Courts ("The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.").

16

*A. Count Three: Respondents' Alleged Obligation to Facilitate Mr. Paracha's
Transfer or Release from Guantanamo Bay Naval Base*

According to Mr. Paracha, the PRB's clearance for release triggered several

obligations for the United States that respondents so far have neglected. See 2d Habeas Pet.

¶¶ 17, 19-20. First, he argues that respondents have ignored their obligation, triggered by the

PRB's decision, "to work to carry out [his] release[] from Guantanamo." Pet. Reply to Mot. to

Dismiss at 5; see also 2d Habeas Pet. ¶ 17; 2d Habeas Pet. Suppl. at 12.[7] Second, he asserts that

the Secretary of Defense has failed to provide notice to various congressional committees of Mr.

Paracha's supposedly impending release. See 2d Habeas Pet. ¶¶ 19-20. Both arguments fail as

claims for relief because such claims are statutorily barred by the Military Commissions Act of

2006, Pub. L. No. 109-366, 120 Stat. 2600, 2635-36 (codified at 28 U.S.C. § 2241(e)), and Mr.

Paracha lacks standing to challenge respondents' purported misconduct.

The relevant provisions of the Military Commissions Act provide:

(1) No court, justice, or judge shall have jurisdiction to hear or
consider an application for a writ of habeas corpus filed by or on

---

[7]     Mr. Paracha cites two separate Executive Orders in support of this proposition:
Executive Order 13,492, § 4(c)(2), 74 Fed. Reg. 4,897, 4,899 (Jan. 22, 2009); and Executive
Order 13,567, § 4(a), 76 Fed. Reg. 13,277, 13,279 (Mar. 7, 2011). See 2d Habeas Pet. ¶ 17; 2d
Habeas Pet. Suppl. at 12. Enacted in 2009, Executive Order 13,492 "call[ed] for a prompt and
comprehensive interagency review of the status of all individuals [then] detained at
Guantanamo," commonly referred to as the "Guantanamo Review Task Force." DEP'T OF JUST.
ET AL., FINAL REPORT, GUANTANAMO REVIEW TASK FORCE 1-2 (2010), https://www.justice.gov/
sites/default/files/ag/legacy/2010/06/02/guantanamo/review/final-report.pdf. Upon determining
that it was "possible to transfer or release the individuals consistent with the national security
and foreign policy interests of the United States," the government was required to "work to effect
promptly the release or transfer of all individuals for whom release or transfer [wa]s possible."
Exec. Order No. 13,492, § 4(c)(2), 74 Fed. Reg. at 4,899. Notably, the Executive Order did not
guarantee the immediate release of individuals for whom release or transfer was possible.
Regardless, that provision is unrelated to the PRB process, which was implemented by Executive
Order over two years later, see Exec. Order No. 13,567, 76 Fed. Reg. at 13,277, and is the focus
of Mr. Paracha's claim, see 2d Habeas Pet. ¶ 17 (noting the "action of the [PRB] triggered the
obligation"). The Court therefore will analyze this aspect of Mr. Paracha's claim solely with
reference to Executive Order 13,567.

> behalf of an alien detained by the United States who has been
> determined by the United States to have been properly detained as
> an enemy combatant or is awaiting such determination.
>
> (2) Except as provided in [section 1005(e) of the Detainee
> Treatment Act of 2005], no court, justice, or judge shall have
> jurisdiction to hear or consider any other action against the United
> States or its agents relating to any aspect of the detention, transfer,
> treatment, trial, or conditions of confinement of an alien who is or
> was detained by the United States and has been determined by the
> United States to have been properly detained as an enemy
> combatant or is awaiting such determination.

28 U.S.C. § 2241(e). As this Court has previously recognized, although the Supreme Court held

that subsection (e)(1) "'operates as an unconstitutional suspension of the writ' of habeas corpus,"

subsection (e)(2) "remains in effect." Paracha I, 194 F. Supp. 3d at 11 (quoting Boumediene v.

Bush, 553 U.S. at 733); see also Aamer v. Obama, 742 F.3d at 1030 (noting that "section

2241(e)(2) . . . continues in force" (citing Al-Zahrani v. Rodriguez, 669 F.3d 315, 319 (D.C.

Cir. 2012))).

Under section 2241(e)(2), this Court lacks jurisdiction to consider a claim that

"do[es] not sound in habeas." Aamer v. Obama, 742 F.3d at 1030. A claim that sounds in

habeas is one in which a prisoner either challenges "the very fact or duration of his physical

imprisonment" or "the conditions of his confinement." Id. at 1032 (quoting Preiser v. Rodriguez,

411 U.S. 475, 500 (1973)); see also Al-Qahtani v. Trump, 443 F. Supp. 3d at 121-22 ("Habeas

corpus tests not only the fact but also the form of detention." (quoting Hudson v. Hardy, 424

F.2d 854, 855 n.3 (D.C. Cir. 1970))).

Although Mr. Paracha states that his claims for "other relief" are "ancillary to the

habeas petition in that they seek to carry out the release demanded in habeas," Pet. Reply to Mot.

to Dismiss at 2, his claims "do[] not actually challenge the legality of his confinement, nor any

aspect of the place or conditions of his confinement." Paracha I, 194 F. Supp. 3d at 11.  In Count

18

Three, Mr. Paracha challenges the alleged delay with which respondents have effectuated his release, not the government's authority to detain him under the AUMF itself.[8] His claims therefore "do not sound in habeas" and are barred under section 2241(e)(2). Id. (quoting Aamer v. Obama, 742 F.3d at 1030).

Even if the Court had jurisdiction to consider Mr. Paracha's claims, Mr. Paracha lacks standing to assert them. Constitutional "standing is an 'essential and unchanging' predicate to any exercise of [this Court's] jurisdiction," Fla. Audobon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)), and it is "one of the essential prerequisites to jurisdiction under Article III." Fleming v. Cherokee Nation, Civil Action No. 19-1397, 2019 WL 2327814, at *3 (D.D.C. May 31, 2019) (quoting Crow Creek Sioux Tribe v. Brownlee, 331 F.3d 912, 915 (D.C. Cir. 2003)). To establish standing, Mr. Paracha bears the burden of establishing (1) that he has suffered a concrete injury in fact – the invasion of a legally protected interest – that is particular to him and is actual or imminent, as opposed to conjectural or hypothetical; (2) that the injury is fairly traceable to respondents' conduct – that is, a causal connection exists between the injury and respondents; and (3) that it is likely, and not merely speculative, that a favorable decision on the merits will redress Mr. Paracha's injury. See Friends of Animals v. Jewell, 824 F.3d 1033, 1040 (D.C. Cir. 2016) (citing Lujan v. Defs. of Wildlife, 504 U.S. at 560).

Mr. Paracha's first claim under Count Three relies on Executive Order 13,567. He argues that respondents have failed to exercise "vigorous efforts" to have him repatriated by

---

[8]     And, as noted above, Mr. Paracha has not demonstrated that respondents no longer have the legal authority to detain him under the AUMF. See supra Part II. Count Three therefore is premised on the erroneous conclusion that Mr. Paracha is entitled to immediate release.

Pakistan. See 2d Habeas Pet. Suppl. at 12. This argument fails because Mr. Paracha does not

have a legally protected interest in the Executive Order. Executive Order 13,567 provides, in

pertinent part:

> If a final determination is made that [continued law of war
> detention is no longer warranted for a detainee to protect against a
> significant threat to the security of the United States], the
> Secretaries of State and Defense shall be responsible for ensuring
> that vigorous efforts are undertaken to identify a suitable transfer
> location for any such detainee, outside of the United States,
> consistent with the national security and foreign policy interests of
> the United States . . . .

Exec. Order No. 13,567, § 4(a), 76 Fed. Reg. at 13,279. But the Executive Order also clearly

states: "This order is not intended to, and does not, create any right or benefit, substantive or

procedural, enforceable at law or in equity by any party against the United States, its

departments, agencies, or entities, its officers, employees, or agents, or any other person." Id.

§ 10(c), 76 Fed. Reg. at 13,280. Thus, although the Executive Order created internal obligations

for the Secretaries of State and Defense, it did not create any private rights that Mr. Paracha can

sue to enforce. See, e.g., Ahjam v. Obama, 37 F. Supp. 3d at 280 (finding no injury in fact

where the petitioner claimed a legally protected interest in an Executive Order that similarly, by

its terms, "d[id] not, create any right or benefit, substantive or procedural" (quoting Exec. Order

No. 13,492, § 8(c), 74 Fed. Reg. at 4,900)); see also Meyer v. Bush, 981 F.2d 1288, 1296 n.8

(D.C. Cir. 1993) ("An Executive Order devoted solely to the internal management of the

executive branch—and one which does not create any private rights—is not, for instance, subject

to judicial review.").

Nor does Mr. Paracha have standing to assert his second claim under Count Three

that respondents have failed to provide notice to certain congressional committees, as required by

section 1034 of the National Defense Authorization Act for Fiscal Year 2016 ("2016 NDAA"),

20

Pub. L. No. 114-92, 129 Stat. 726, 969-71 (codified at 10 U.S.C. § 801 note).  In relevant part,

that statute provides:

> [T]he Secretary of Defense may not use any amounts authorized to
> be appropriated or otherwise available to the Department of
> Defense to transfer any individual detained at Guantanamo to the
> custody or control of the individual's country of origin, any other
> foreign country, or any other foreign entity unless the Secretary
> submits to the appropriate committees of Congress [a written
> certification] not later than 30 days before the transfer of the
> individual.

Id. § 1034(a)(1), 129 Stat. at 969; see also id. § 1034(b), (f)(1), 129 Stat. at 969-71 (defining the

contents of an adequate certification and identifying the appropriate committees of Congress that

must receive such certification).  In other words, the statute precludes the Secretary of Defense

from using certain funds to effectuate the transfer of a detainee at the Guantanamo Bay Naval

Base without first providing written notice to several congressional committees.

Mr. Paracha argues that the government's failure to provide the required

certifications "has delayed and will continue to delay" his release.  2d Habeas Pet. ¶ 20.  Yet he

has proffered no evidence showing that the government's "neglect" of this requirement has

caused such "delay."  Indeed, there may be a number of reasons why the Secretary of Defense

has not yet provided notice to congressional committees, the most obvious of which is that the

Secretary of Defense has not made a final decision to release or transfer Mr. Paracha.  See 2012

NDAA, Pub. L. No. 112-81, § 1023(b)(2), 125 Stat. at 1564 (clarifying "that the Secretary of

Defense is responsible for any final decision to release or transfer an individual detained [at

Guantanamo Bay Naval Base] . . . and that in making such a final decision, the Secretary shall

consider the recommendation of [the PRB] but shall not be bound by any such

recommendation").  Moreover, it is impossible to determine whether section 1034(a)(1) has been

violated at all, given that no definitive release date has been set.  See 2016 NDAA, Pub. L.

21

No. 114-92, § 1034(a)(1), 129 Stat. at 969 (requiring the Secretary of Defense to provide a written certification to the appropriate congressional committees "not later than 30 days before the transfer of the individual" (emphasis added)). Simply put, the 2016 NDAA has not caused the injury that Mr. Paracha asserts, and his claims thereunder remain premature at best. See Friends of Animals v. Jewell, 824 F.3d at 1040 (noting that the claimant must demonstrate "a causal connection between the claimant's injury and the subject of his complaint" and that "the injury will be 'redressed by a favorable decision'" (quoting Lujan v. Defs. of Wildlife, 504 U.S. at 560-61)).

For these reasons, the Court has dismissed Count Three of Mr. Paracha's second petition for habeas corpus and other relief for lack of jurisdiction and because Mr. Paracha lacks standing to raise such claims.

### B.  Count Four: Whether Section 1034 of the 2016 NDAA Is an Unconstitutional Bill of Attainder

Mr. Paracha next challenges section 1034 of the 2016 NDAA, Pub. L. No. 114-92, 129 Stat. at 969-71 as an unconstitutional bill of attainder. See 2d Habeas Pet. ¶ 21. This Court, however, has previously rejected this very argument, concluding that Mr. Paracha lacked standing to bring such a challenge and, in the alternative, that the claim was barred by 28 U.S.C. § 2241(e)(2). See Paracha I, 194 F. Supp. 3d at 11; see also Second Supplement to Petitioner's Motion for Summary Judgment to Include the 2016 Authorizations and Appropriations Act, Civil Action No. 04-2022 [Dkt. No. 418] at 6 (challenging section 1034 as a bill of attainder).

"The law of the case doctrine establishes that 'a court involved in later phases of a lawsuit should not re-open questions decided (i.e., established as the law of the case) by that

22

court or a higher one in earlier phases.'" United States v. Philip Morris USA Inc., 436 F. Supp.

3d 1, 7 (D.D.C. 2019) (quoting Crocker v. Piedmont Aviation, Inc., 49 F.3d 735, 739 (D.C. Cir.

1995)); LaShawn v. Barry, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc) (explaining that the

law of the case doctrine dictates that "[t]he same issues presented a second time in the same case

in the same court should lead to the same result"). "It would be a waste of judicial resources –

and it would contravene the law of the case doctrine – to permit relitigation of [resolved] legal

conclusions." United States v. Philip Morris USA Inc., 436 F. Supp. 3d at 7. Pursuant to the law

of the case doctrine, the Court will not revisit its prior ruling. It therefore has dismissed Count

Four of Mr. Paracha's second petition for habeas corpus and other relief.[9]

### C. Count Five: Whether 28 U.S.C. § 2243 Requires Respondents to "Produce the Body" of Mr. Paracha

Mr. Paracha relies on 28 U.S.C. § 2243 to argue that respondents must physically

bring him to the courthouse of the United States District Court for the District of Columbia. See

2d Habeas Pet. ¶ 24. That statute provides, in pertinent part: "Unless the application for the writ

[of habeas corpus] and the return present only issues of law the person to whom the writ is

directed shall be required to produce at the hearing the body of the person detained." 28 U.S.C.

§ 2243. Thus, the text of the statute itself makes clear that "the Court may independently

determine as a matter of law that a habeas petition does not merit . . . the production of the

petitioner before it." Does v. Bush, 2006 WL 3096685, at *2; see also Qassim v. Bush,

---

[9]     Mr. Paracha suggests that this Court's prior ruling is no longer applicable because
Mr. Paracha "was a prisoner held under the law of war and therefore not about to be released
even if the restrictive statutes were struck down" when the Court previously decided the issue.
Pet. Reply to Mot. to Dismiss at 6. Yet, as explained above, the United States still retains legal
authority to detain Mr. Paracha under the AUMF, see supra Sections II.B-.C, and there has been
no material change of circumstances to warrant reconsideration of the Court's prior decision.

382 F. Supp. 2d 126, 129 (D.D.C. 2005) (observing that "the language of the habeas statute that contemplates the physical production of a petitioner is rarely used").

Having carefully considered and denied Mr. Paracha's two claims for habeas corpus on the merits, the Court has determined that both claims could be resolved as a matter of law. See supra Part II. The physical production of Mr. Paracha to the courthouse therefore is unnecessary. The Court therefore has dismissed Count Five of Mr. Paracha's second petition for habeas corpus and other relief.[10]

### D. Count Six: Whether 49 U.S.C. § 44903(j)(2)(C)(v) Is an Unconstitutional Bill of Attainder

Lastly, Mr. Paracha challenges 49 U.S.C. § 44903(j)(2)(C)(v) as an unconstitutional bill of attainder and "a deprivation without due process of the right to travel." 2d Habeas Pet. ¶¶ 25-26. That provision requires the Administrator of the Transportation Security Administration to "include on the No Fly List any individual who was a detainee held at the [Guantanamo Bay Naval Base] unless the President certifies in writing to Congress that the detainee poses no threat to the United States, its citizens, or its allies." 49 U.S.C. § 44903(j)(2)(C)(v).

---

[10] Respondents' reliance on Kiyemba v. Obama, 605 F.3d 1046 (D.C. Cir. 2010) (per curiam), is misplaced. There, the D.C. Circuit concluded that the court could not order the Executive Branch to release Guantanamo detainees into the United States, where those detainees previously had prevailed on their claims for habeas corpus but so far had been unable to resettle to another country. See id. at 1047-48 (reinstating the opinion that it is "within 'the exclusive power of the political branches to decide which aliens may, and which aliens may not, enter the United States, and on what terms.'" (quoting Kiyemba v. Obama, 555 F.3d 1022, 1025 (D.C. Cir. 2009), vacated, 559 U.S. 131, 132 (2010) (per curiam))). The Court does not understand Mr. Paracha, through Count Five, to be requesting his immediate release into the United States but rather the production of his body to the courthouse for a hearing.

24

As this Court has held with regard to Mr. Paracha's other claims that certain statutes were unconstitutional bills of attainder, see Paracha I, 194 F. Supp. 3d at 9-11, Mr. Paracha lacks standing to assert this bill-of-attainder claim.[11] First, Mr. Paracha cannot establish an injury in fact. See Friends of Animals v. Jewell, 824 F.3d at 1040. Mr. Paracha argues that section 44903(j)(2)(C)(v) and the No Fly List "harm" him because, he surmises, they are being used to hinder his release from Guantanamo Bay Naval Base. See 2d Habeas Pet. ¶ 27. But this Court has twice now rejected Mr. Paracha's claims for habeas corpus, see supra Sections II.B-C; Paracha II, 453 F. Supp. 3d at 237, and he has not established an underlying "legally protected interest" in being transferred or released from Guantanamo Bay Naval Base that is being harmed. See Paracha I, 194 F. Supp. 3d at 10. Nor can Mr. Paracha demonstrate a causal connection between section 44903(j)(2)(C)(v) and his continued confinement or a likelihood of redressability. See Friends of Animals v. Jewell, 824 F. 3d at 1040. As discussed above, see supra Part II, Mr. Paracha is detained pursuant to the AUMF – not section 44903(j)(2)(C)(v) or because of his inclusion on the No Fly List – and invalidating section 44903(j)(2)(C)(v) "w[ould] have no impact whatsoever upon his continued detention, nor w[ould] it actually affect his ability to be transferred." Paracha I, 194 F. Supp. 3d at 10.

Moreover, even if Mr. Paracha had standing to challenge section 44903(j)(2)(C)(v) as an unconstitutional bill of attainder, such a claim is jurisdictionally barred by 28 U.S.C. § 2241(e)(2). See Paracha I, 194 F. Supp. 3d at 11. Mr. Paracha argues that his

---

[11]     To the extent that Mr. Paracha suggests that he need not establish standing to pursue a claim under the Declaratory Judgement Act, see Pet. Reply to Mot. to Dismiss at 8-9 (citing 28 U.S.C. §§ 2201-2202), he is incorrect. "The fact that [plaintiff] seeks a declaratory judgment does not obviate its need to show standing." Grand Lodge of Fraternal Ord. of Police v. Ashcroft, 185 F. Supp. 2d 9, 15 n.4 (D.D.C. 2001); accord Cigar Ass'n of Am. v. U.S. Food & Drug Admin., 411 F. Supp. 3d 1, 2 (D.D.C. 2019).

inclusion on the No Fly List may frustrate his release from detention, but such a claim does not challenge the legality or conditions of his confinement. See id.; see supra Section III.B; cf. In re Petitioners Seeking Habeas Corpus Relief in Relation to Prior Detentions at Guantanamo Bay, 700 F. Supp. 2d 119, 135 (D.D.C. 2010) (noting that the alleged injury of being included on the No Fly List is irrelevant to "the legality of [petitioners'] detention at Guantanamo"). Mr. Paracha's bill-of-attainder claim therefore "do[es] not sound in habeas" and is barred by section 2241(e)(2). Aamer v. Obama, 742 F.3d at 1030.

## IV.  MOTIONS FOR DISCOVERY AND A MORE DEFINITE STATEMENT

After Mr. Paracha filed his second petition for habeas corpus and other relief but before the Court consolidated these two cases, Mr. Paracha filed three successive motions for discovery and a more definite statement within the span of two weeks. First, on October 28, 2021, he moved the Court to "order the parties to confer with a view to satisfying [Mr. Paracha's] need for discovery, after which the parties may submit discovery demands and the objections thereto to the Court for resolution." Mot. to Show Cause at 4. Next, on November 3, 2021, incorporating his previous request for relief, Mr. Paracha asked that the Court "[o]rder that Respondents file a proper return explaining the specific facts causing Petitioner's continued confinement." Mot. for More Def. Stmt. at 6. Finally, on November 11, 2021, Mr. Paracha filed a "renewed" motion for discovery, incorporating all previous requests for relief and asking the Court to order respondents to answer his discovery demands, which were attached to the motion and previously had been previewed to respondents in prior filings and communications. See Mot. for Discov. at 12-13, 20-21.[12]

---

[12]     These motions are based on the same false premises: that there is no longer any legal authority to detain Mr. Paracha and that he has a legally protected interest in his immediate

26

For the reasons discussed below, the Court concludes that Mr. Paracha's requests are either beyond the permissible scope of his claims for habeas corpus or without merit.

## A. Mr. Paracha's Requests for Discovery

Under Section I.E.2 of the Case Management Order, as amended, this Court may, for good cause, order discovery beyond what respondents are obligated to provide under Sections I.D.1 and I.E.1. See Case Management Order ("CMO"), Civil Action No. 04-2022 [Dkt. No. 204]; Order ("1st CMO Amend."), Civil Action No. 04-2022 [Dkt. No. 219]; Order ("2d CMO Amend."), Civil Action No. 04-2022 [Dkt. No. 308].[13] Requests for additional discovery must (1) be narrowly tailored, (2) specify the discovery sought, (3) explain why the request, if granted, would likely produce evidence that the petitioner's detention is unlawful, and (4) explain why the requested discovery will enable petitioner to rebut the basis for detention without unduly disrupting or burdening the government. See CMO at 3-4 (citing Harris v. Nelson, 394 U.S. 286, 300 (1969)); see also 2d CMO Amend. at 4 (ordering that petitioner is presumed to have satisfied the fourth prong, absent rebuttal by respondents, if he satisfies the first three prongs).

---

release. See Mot. to Show Cause at 3 (declaring "a prisoner is being held far beyond the ostensible time for his release"); Mot. for More Def. Stmt. at 1 (requesting "a more definite statement explaining the facts that are preventing his release from being carried out"); Mot. for Discov. at 2 (requesting discovery "so that [Mr. Paracha] and the Court may begin to understand what is delaying Petitioner's release and what, if anything, can be done about it"). But as explained above, see supra Sections II.B-.C, the legal authority to detain Mr. Paracha has not expired.

[13]     Judge Hogan issued a Case Management Order governing, among other things, discovery of all Guantanamo habeas cases in this District on November 6, 2008, see CMO at 3-4, and amended the Order on December 16, 2008, see 1st CMO Amend. The undersigned amended certain definitions in the CMO for cases in this Court, including the instant case, on July 16, 2009. See 2d CMO Amend.

27

Mr. Paracha requests the following discovery:

1.  Name and contact information for all officials in Enforcement and Removal Operations, Immigration and Customs Enforcement, who are tasked with physical deportation or removal of aliens to Pakistan.

2.  The present location and condition of Saifullah Paracha's Pakistani passport.

3.  Contact information for the present custodian of Saifullah Paracha's Pakistani passport and all other items taken from him after his seizure in Bangkok in 2003.

4.  An inventory of all items taken from Saifullah Paracha after his seizure in Bangkok in 2003, with the present location and custodian of each item.

6.  The security agreement concerning Uzair Paracha agreed to by the government of Pakistan.

7.  Names and contact information for each person in the Department of State assigned to work on carrying out Petitioner Saifullah Paracha's release.

8.  Names and contact information for each person in the Department of Defense assigned to work on carrying out Petitioner's release.

9.  Names and contact information for each person in the Department of Defense assigned to work on drafting the notice of Petitioner's release to be sent to various Congressional committees.

10.  Names and contact information for each employee or representative of the United States in Islamabad or elsewhere assigned to negotiate with the government of Pakistan the return of prisoners and security agreements about returned prisoners.

Mot. for Discov. at 20-21.[14]  The Court concludes that Mr. Paracha's requests for discovery do not satisfy the Amended Case Management Order's requirements for additional discovery under Section I.E.2 because they do not go to the lawfulness of his detention.

---

[14]     Mr. Paracha has withdrawn his fifth discovery demand. See Pet. Reply ISO Discov. Mots. at 10.

28

In contrast to Mr. Paracha's prior requests for additional discovery, which related to the government's legal authority to detain him, see Memorandum Opinion and Order, Civil Action No. 04-2022 [Dkt. No. 517] at 3, 5 (noting that some of the requested materials were "likely to contain information on the nature of Mr. Paracha's business activities, which l[ay] at the core of respondents' allegations"), his current requests relate to the government's ability to effectuate his release. Mr. Paracha's first request seeks to discover whether Immigration and Customs Enforcement is "willing and capable" of facilitating Mr. Paracha's transfer to Pakistan "on a practical basis." Pet. Reply ISO Discov. Mots. at 9-10. His second, third, and fourth requests seek information about the whereabouts of Mr. Paracha's personal items and passport, see id. at 10, which is irrelevant to the government's authority to detain Mr. Paracha under the AUMF. Mr. Paracha's sixth request, which seeks a security agreement between the United States and Pakistan concerning the repatriation of Uzair Paracha, petitioner's son, see id. at 11, is similarly unrelated to whether the government can lawfully detain Mr. Paracha. Finally, Mr. Paracha's seventh through tenth requests, which seek the contact information of government officials "assigned to work on carrying out [his] release," id., do not pertain to the lawfulness of Mr. Paracha's detention. Rather, they seek to enable Mr. Paracha's counsel to communicate and coordinate with government personnel to effectuate Mr. Paracha's release. See id. at 12-13. None of these requests fall within the permissible scope of discovery, as set forth in the Amended Case Management Order, and the Court therefore has denied them in full.

### B. Mr. Paracha's Requests for a More Definite Statement

Mr. Paracha asks that respondents be required to file a factual return "with a more definite statement of the reasons for confinement than any they have offered so far." Pet. Reply ISO Discov. Mots. at 8. Under the Amended Case Management Order, the government must

"file [a] return [in response to a petition for habeas corpus] . . . containing the factual basis upon which it is detaining the petitioner." CMO at 2. And in response, "the petitioner shall file a traverse containing the relevant facts and evidence supporting the petition." 1st CMO Amend. at 3. Mr. Paracha argues that, without a more detailed statement, he cannot "know why he is held" and consequently cannot file a responsive traverse. Id. at 9.

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). Such a motion "must point out the defects complained of and the details desired." Id. Resolving a motion for a more definite statement is a matter within the discretion of the court. See McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996); see also Hilska v. Jones, 217 F.R.D. 16, 21 (D.D.C. 2003) (observing that "courts are reluctant to compel a more definite statement pursuant to Rule 12(e)").

The Court concludes that respondents' responses to Mr. Paracha's second petition for habeas corpus and other relief are adequate to put Mr. Paracha on notice of the continuing factual basis to detain him. See Paracha v. Obama, Civil Action No. 04-2022, 2009 WL 2751788, at *1 (D.D.C. Aug. 28, 2009). For example, respondents' return to Mr. Paracha's supplemental petition for habeas corpus describes the United States' continuing military operations against Al-Qaeda and associated forces, supporting the finding that hostilities against Al-Qaeda are ongoing and the conclusion that there continues to be legal authority to detain Mr. Paracha under the AUMF. See 2d Habeas Pet. Return at 13-44. This, in addition to this Court's previous finding that Mr. Paracha rendered substantial support to Al-Qaeda, see Paracha II, 453 F. Supp. 3d at 235-36, clearly set forth the factual basis for detaining Mr. Paracha. The Court therefore has denied Mr. Paracha's requests for a more definite statement.

V.  CONCLUSION

For the reasons set forth in this Opinion, the Court issued an Order on June 6,

2022, denying Mr. Paracha's second petition for habeas corpus and other relief, as well as his

motions for discovery and a more definite statement, and granted respondents' motion to

dismiss.  See Order, Civil Action No. 21-2567 [Dkt. No. 41].  This Opinion explains the

reasoning underlying that Order.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 7|1|22

31